# Anning O. Campbell *et al.*

*v.*

## Florence A. Potter.

*Filed at Ottawa October 26, 1893.*

1. ADVANCEMENT—*when presumed.* Where a father conveys land to his son for the expressed consideration of $1000 and natural love and affection, it will, in the absence of other evidence to the contrary, be presumed that the conveyance is an advancement or a gift from the father to the son.

2. SAME—*presumption—how rebutted.* The presumption of an advancement may be overcome or rebutted by parol evidence of antecedent, contemporaneous or subsequent facts and circumstances so immediately connected with it as to illustrate the intention of the parties, and which clearly shows that it was intended that some beneficial interest or use was retained by the grantor.

3. ADMINISTRATION OF ESTATES—*damages for breach of a contract—jurisdiction of county court.* The county court is authorized to ascertain the damages growing out of the breach of contracts, and to require the same to be paid out of the estate of the party failing to perform the same. So when a party agreeing to support his father and his wife during their lives, dies, and thereby ceases to furnish such support, his estate will be liable for damages for his failure to continue such support.

4. JURISDICTION—*of a court of equity—to declare a lien.* There is no principle upon which a court of equity is authorized to declare a lien in favor of damages growing of the breach of contract, in the absence of fraud: when there is no fund or property upon which a court of equity can seize to correct the effect of the fraud, and place the injured party *in statu quo.*

5. SAME—*action against devisee—for debt of devisor.* If a right of action exists against a devisee under sections 10 and 11 of chapter 59 of the statutes of 1874, by which he or she is made liable, as devisee or heir, to creditors of the devisor or intestate, to the full amount of the lands, etc., devised or descended to him or her, if the personal estate of the devisor or intestate is insufficient to discharge the just demands the remedy is by action at common law.

6. In such case the action would lie against the devisee, in the same manner it could be brought against an executor or administrator; and in such suit the executor could be joined with the devisee, as is provided by statute may be done, or, the creditor having first procured

an allowance of his claim in the administration proceedings, and it appearing that there was not sufficient in the hands of the executor to satisfy such allowance, a separate suit or action could be maintained against the devisee, as provided in section 15 of chapter 59 of the statute.

7. SPECIFIC PERFORMANCE—*contract requiring personal services— after death of person contracting.* If a contract of a son for the support and maintenance of his father and his wife during their lives, requires the personal services, attention and care of the son, such as may be demanded by age, infirmity or sickness, a court of equity is powerless to compel specific performance by the personal representative or devisee of the son after his death.

8. SAME—*when remedy at law exists.* But if the contract contemplates only the supply of such articles and sums of money as may be reasonably necessary for the support and maintenance of the father and his wife during their lives, and no breach of the same during the son's life has occurred, there is a complete remedy at law for a breach of the contract after the son's death, and therefore specific performance will not be granted.

9. CHANCERY PRACTICE—*demurrer waived by answer raising issue as to the facts.* This court will not determine the questions sought to be raised by a demurrer to a bill in chancery, when the bill is answered and its material allegations put in issue.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Ogle county; the Hon. JOHN V. EUSTACE, Judge, presiding.

This was a bill in equity, brought to enforce the specific performance of an alleged contract between plaintiff in error Anning O. Campbell and his son, Darwin H. Campbell, deceased, husband of defendant in error, whereby, it is said, the son obligated himself to provide support and maintenance for his father, said Anning O. Campbell, and his wife, co-plaintiff in error, during their natural lives.

In 1866 Anning O. Campbell conveyed in fee to his son, Darwin, a tract of land consisting of one hundred and sixty-six acres, in consideration of love and affection, the said Anning O. Campbell at that time being a widower. He subsequently, in April, 1867, was married to his present wife. In 1872 Anning O. Campbell also transferred to his said son, Darwin,

a store in Byron, Ill., consisting of a stock of goods of the value of $8000, at which time, the bill alleges, it was agreed by and between the parties, in consideration of such transfer, that said Darwin H. Campbell should support, provide for and maintain the plaintiffs in error, and that the said real estate, as well as the stock of goods, should be held bound and pledged therefor. This agreement was not in writing, nor was any written memoranda thereof made or entered into between the parties. In 1883 the said stock of goods was sold for $5000, and at that time, it is alleged, said Darwin verbally agreed to set apart and invest $2000 of the proceeds of such sale as security for the support of plaintiffs in error, which agreement was never performed, but he nevertheless kept and maintained plaintiffs in error from the time the store was transferred to him, in 1872, until his death, in January, 1887. By will, Darwin H. Campbell devised all his estate, real and personal, to his wife, defendant in error.

The prayer of the bill was, that the rights of plaintiffs in error to maintenance and support be ascertained and declared by the court; that their rights in said estate be determined, and that said estate, or so much thereof as might be sufficient for the purpose, be set apart for their support, and that a trustee be appointed to hold and apply the same to this end, and also that the agreement to invest the sum of $2000 for this purpose be enforced.

Defendant in error, and the then executor of the will, who was also made a party defendant, both answered, denying the allegations of the bill, the former also pleading the Statute of Frauds, and reserving demurrer to the bill, upon the ground that for the matters complained of, an adequate remedy existed at law.

The circuit court found the equities in favor of the plaintiffs in error, and decreed specific performance of the agreement alleged to have been made at the time of the transfer of the stock of goods in 1872; that the defendant, Florence A. Pot-

ter, now executrix of the last will of Darwin H. Campbell, deceased, within thirty days from December 29, 1891, pay to plaintiff in error Anning O. Campbell $1500, the amount due for past support of plaintiffs in error, and that on the first days of June and January, 1892, and on the first days of June and January in each year thereafter, the sum of $150 be paid during the lives of plaintiffs in error. It was also decreed that the said sums of money so adjudged to be paid should be a lien, in like manner as a judgment at law, upon the lands described, the same being the one hundred and sixty-six acres aforesaid. Provision is then made by the decree, in case of failure to pay the said sums of money as therein required, for the sale of said land, or a sufficient part thereof, to satisfy the amounts due and unpaid, etc. Upon appeal to the Appellate Court this decree was reversed and the cause remanded, with instructions to dismiss the bill. Such further facts as are necessary to an understanding of the case are stated in the opinion.

Mr. WILLIAM BARGE, for the plaintiffs in error:

A party may, by agreement, create a charge or claim, in the nature of a lien, on real as well as personal property whereof he is the owner, which a court of equity will enforce against him and a volunteer under him. *Ketchum* v. *St. Louis,* 101 U. S. 316; *Pinch* v. *Anthony,* 8 Allen, 536; 2 Story's Eq. Jur. sec. 1231; *Railroad Co.* v. *Fackney,* 78 Ill. 116.

The averment of the agreement that $2000 security was to be given when the store was disposed of by the son, in 1883, and the prayer that his legal representative may be required to give it, confers jurisdiction upon a court of equity, which, alone, can enforce performance of this agreement. 1 Story's Eq. Jur. sec. 30; 2 id. secs. 714-717; Pomeroy's Specific Per. sec. 1; 2 Parsons on Contracts, 509, 510.

The devise of all the son's property to his wife, without making any provision for the support of his parents, was as

much a fraud on them as the gift of property to a wife or child is upon the rights of creditors, and the law so presumes it. *Cook* v. *Johnson*, 1 Beasley, (12 N. J. Eq.) 51; *Emerson* v. *Bemis*, 69 Ill. 537; *Lawson* v. *Funk*, 108 id. 502.

Courts regard such contracts unlike ordinary transactions for gain, and draw a distinction between them. *Frazier* v. *Miller*, 16 Ill. 51.

The support of the citizen concerns the public, and is often furnished by it. *Sands* v. *Sands*, 112 Ill. 232.

An oral agreement, made by a grantee at the time of the execution of the deed, to furnish the grantor with a home for life, and which has been performed during the grantee's lifetime, is taken out of the Statute of Frauds, so that specific performance may be enforced against the grantee's devisees. *Herrick* v. *Starkweather*, 8 N. Y. 145; 54 Hun, 532; *Diveraux* v. *Cooper*, 11 Vt. 103.

After answer, it is too late to question the jurisdiction of the court. *Stout* v. *Cook*, 41 Ill. 447; *Gage* v. *Griffin*, 103 id. 41; *Grandin* v. *LeRoy*, 2 Paige's Ch. 508.

Proofs were taken and the cause heard on its merits, and the objection that the complainants have a complete remedy at law was thereby waived by defendant in error. *Dodge* v. *Wright*, 48 Ill. 382; Puterbaugh's Pl. and Prac. in Chancery, 98, 106.

Courts of equity, in cases of fraud, have concurrent jurisdiction with courts of law. *Jones* v. *Neely*, 72 Ill. 449.

The county court is not the forum for this litigation. The rule that requires estates to be settled within two years could not be applied to this case. Such claims could not be adjudicated within that time unless the persons entitled to support should die within that period. Nor has that court any power to compel the giving of the $2000 security, or to enforce the equitable lien, or compel the agreed support. Courts of equity, alone, can require such things and secure the performance of them. 2 Parsons on Contracts, 509, 510; 2 Story's

Eq. Jur. p. 29, secs. 714, 715, 717; Pomeroy's Specific Per. 1; 1 Story's Eq. Jur. 29, 30.

Courts of equity have a paramount jurisdiction in cases of administration and the settlement of estates. *Grattan* v. *Grattan,* 18 Ill. 167; *Hartman* v. *Hartman,* 59 id. 103.

Mr. N. C. WARNER, and Mr. J. C. SEYSTER, for the defendant in error:

A decree for specific performance will be refused for want of reasonable certainty in establishing the contract. *Foster* v. *Kimmons,* 54 Mo. 488.

A court of equity only proceeds upon the supposition that the parties have met and agreed upon every term, and in the same sense and in like manner, and that no trouble exists in tracing out the practical line where their minds met. If these things do not happen, the jurisdiction of that court fails. *Blanchard* v. *Railway Co.* 31 Mich. 44.

It is not every loose conversation that is to be turned into a contract, although the parties seem to agree. *Brown* v. *Finney,* 53 Pa. St. 373.

Parol proof of a conversation taken seventeen years after the conversation is unsatisfactory evidence in a suit for specific performance. *Cooper* v. *Carlisle,* 2 Green, (N. J.) 525.

When the circumstances of the parties have changed by subsequent events, so that its performance would be attended with hardship, it will not be decreed. *McCarty* v. *Kyle,* 4 Cold. 348.

A specific performance will not be decreed except where it would be strictly equitable to do so. *Bachu's Appeal,* 58 Pa. St. 186; *Blanchard* v. *Railway Co.* 31 Mich. 44; *Foster* v. *Kimmons,* 54 Mo. 488.

Contracts for personal acts are not, as a general rule, the subject for specific performance, because the court of equity can not enforce its decree. Pomeroy's Specific Per. sec. 22; *Richmond* v. *Railway Co.* 33 Iowa, 473.

The decree, so far as it seeks to charge the lien, is erroneous. The personal assets must be shown to have been exhausted before real estate inherited can be made liable. And it follows, a claim would needs be made in administration within two years from date of letters, to render the inventoried estate, personal or real, liable. *Tennant* v. *Neal,* 20 Ill. App. 573.

The widow is not a party to the alleged contract, nor is there any evidence of her agreement to charge her lands. It was therefore error to direct the master to sell, without reference to the widow's interest in the land. *Mathison* v. *Wilson,* 87 Ill. 53; *Martin* v. *Merritt,* 57 Ind. 34.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

We need not pause to determine the questions sought to be raised by the demurrer, for the reason that the bill was answered and its material allegations put in issue. We may appropriately proceed at once to a consideration of the more important question of whether the facts proved, and tending to support the allegations of the bill, are sufficient to entitle the complainants to the decree entered, or to any relief under the bill in a court of equity.

The land mentioned, was conveyed by Anning O. Campbell to the son, Darwin H., in 1866, for the expressed consideration of $1000, and there is no pretence that it was not intended to convey the fee simple title. If it be conceded, which it can not be, that Anning O. Campbell is a competent witness in his own behalf, as against the devisee of Darwin H. Campbell, (Rev. Stat. sec. 2, chap. 51,) there was not, at the time of the execution of the deed, any understanding or agreement that in consideration of the conveyance there should be any responsibility resting upon the grantee for the support of the grantor. Indeed, it is not contended that the support of the father by the son was within the contemplation of the parties. It was an absolute gift by the father to the son. The cases of *Frazier* v. *Miller,* 16 Ill. 48, *Oard et al.* v. *Oard et al.* 59 id. 46, *Jones*

v. *Neely,* 72 id. 449, *Gallaher* v. *Herbert,* 117 id. 160, and *Henschel* v. *Mamero,* 120 id. 660, can therefore have no application here, so far as the land is concerned. The land not having been taken as consideration for support of the grantor, the grounds upon which relief was granted in those cases is wholly wanting. It is clear, therefore, that no lien or trust was created in or upon the land, and no burden is cast thereon by the will of Darwin H. Campbell.

If the record were silent in respect of the land being conveyed as a gift, the relation of parent and child existing between the grantor and grantee, no trust would result to the grantor, it would, from the relation, be presumed to have been an advancement. (2 Pomeroy's Eq. Jur. 981; Lewin on Trusts, 144; Jeremy's Eq. 90, 91; 1 White & Tudor's Leading Cases in Eq.; *Maxwell* v. *Maxwell,* 109 Ill. 588; *Smith* v. *Smith et al.* 144 id. 299.) The presumption of an advancement may be overcome or rebutted by parol evidence of antecedent, cotemporaneous or subsequent facts and circumstances so immediately connected with it as to illustrate the intention of the parties, and which clearly shows that it was intended that some beneficial interest or use was retained by the grantor. (2 Pomeroy's Eq. Jur. 1040; Lewin on Trusts, *143, note 1; 2 Story's Eq. 1202, and cases *supra.*) The evidence contained in this record, instead of tending to rebut the presumption of an advancement, sustains it.

Anning O. Campbell was a merchant, and continued in business six years after the gift of the land, and the son, Darwin, lived with him as a member of his family, and this relation continued until the gift of the store to Darwin by the father, in 1872. At that time Anning O. Campbell had married the co-plaintiff in error, and, as he expresses it, feeling too old to attend to business, gave the store to his son, Darwin, and he was to support his father and his wife during their natural lives. He says, that he (Campbell) was to have the money on hand, as he wanted to travel, "and the rent of the forty

acres of land I should use for pin-money. I gave him the store so as to have our living out of it." There seems to have been no change in the mode of living, other than that Darwin H. Campbell provided the means of living until his death, in January, 1887. In 1883, Darwin, apparently with the consent of Anning O. Campbell, sold the store for $5000. It appears from the testimony that the parties lived, during the eleven years that Darwin H. ran the store, and up to his death, as one family, both before and after his marriage, in 1884, and he maintained the household. After the transfer of the store the goods that went to the house for the support of the family, if charged at all, were charged to D. H. Campbell. The father went to the cash drawer and obtained money when he needed it. The clerk was told to let him have money. He and his wife obtained goods at the store, and the money and goods were charged, if to any one, to D. H. Campbell. It is conceded that Darwin H. Campbell supported his father and step-mother, and complied with the alleged agreement until his death.

The allegation of the bill to the effect that it was agreed and understood, at the time of the sale of the store by Darwin, that inasmuch as he was disposing of part of the property held for support, etc., there should be set apart $2000 as security for such support and maintenance, and which should bear seven per cent, etc., it is sufficient to say, is not supported by any evidence in the record. A thorough and careful examination fails to disclose any proof tending to sustain it.

The case then rests upon a parol agreement by Darwin H. Campbell with his father, Anning O. Campbell, made in 1872, that in consideration of the transfer of the store to him, he, Darwin H., would support his father, Anning O. Campbell, and his wife, during their natural lives,—and it is this agreement, and this alone, that the court is asked to compel performance of, by the personal representative and devisee of Darwin H. Campbell.

As seen, the store was transferred by Darwin H. Campbell in 1883, and thereafter he engaged in other occupations. Anning O. Campbell and wife, Darwin H. Campbell, and his wife, after his marriage, continued to live in the homestead of Anning O. Campbell, as one family, and all were supported, as they had been since the transfer of the store to Darwin in 1872, by Darwin, until his death. No portion of the store, or the proceeds derived by Darwin H. Campbell therefrom, is traced into the hands of the personal representative or devisee, so that there is no pretence that a court of equity may follow the fund or property and compel its restoration, as was done in the cases first above cited, or subject it to a specific lien. The question is therefore broadly presented, whether the personal contract of Darwin H. Campbell can be specifically enforced, in equity, against his personal representative or devisee.

It may be conceded, without affecting this question, that Anning O. Campbell might, under the authority of *Frazier* v. *Miller*, and other cases cited *supra*, have prevented the sale of the store by his son upon his refusal to perform the contract upon his part, and compelled a re-delivery of the goods to him, or that he might have compelled a continuance of the business for the purpose of providing the support and maintenance contemplated. If the contract for support and maintenance contemplated the personal services, attention and care of the son, such as might be demanded by age, infirmity or sickness, it is, in effect, conceded that a court of equity would be powerless to compel specific performance by a stranger. The personal services required to be performed could not be such as were contracted for, and the personal representative or the devisee could not be required to perform them. (Pomeroy's Specific Per. sec. 22, *et seq.*) It will be unnecessary to enter upon the discussion of that question, for the reason that all that is sought by this bill is to compel the payment of a sum of money,—the equivalent of the support agreed to be

furnished. The prayer is, that the right of the complainants to support and maintenance out of the estate of Darwin H. Campbell, for their natural lives, may be ascertained and declared; that the estate, or so much thereof as may be necessary for that purpose, be set apart, and a trustee appointed to take, hold and apply the same, etc. The contract is therefore treated, not as one for personal care and attention, but as an agreement, for the consideration named, to furnish, during the lives of Anning O. Campbell and his wife, such articles or sums of money as might be reasonably necessary for their support and maintenance. No breach of the contract occurred during the life of Darwin H. Campbell, and if it be conceded that there has been a breach since his death, and a liability accrued, no reason is perceived, nor is any pointed out, why a complete and adequate remedy does not exist by presentation of a claim therefor to the county court. That court is authorized to ascertain the damages growing out of the breach of contracts, and to require the same to be paid out of the estate. The remedy, thus far, at least, is as complete and adequate at law as it could be in equity.

As already seen, none of the property or its proceeds, forming the consideration for the contract, came to the hands of the executor, nor was any part of the estate, either personal or real, now remaining, in anywise pledged as security for the fulfillment of said contract. If, therefore, the right to recover damages for breach of the personal contract of Darwin H. Campbell exists, the remedy was complete at law, and when ascertained in the county court would stand upon the same footing as any other legal claim against the estate. We can perceive no principle upon which a court of equity is authorized to declare a lien in favor of damages growing out of a breach of this contract, that would not exist in favor of every other contract indebtedness against his estate. It is not pretended that Darwin H. Campbell was guilty of any fraud which would have justified the interference of a court of equity, but

if it was, there being no fund or property upon which a court of equity could seize to correct the effect of the fraud, and place the complainants *in statu quo,* the fraud would not authorize the interposition of a court of equity, even though the remedy might not be in all respects complete and adequate at law.

It is insisted that the devisee took as a volunteer, *cum onere* the debts and liabilities of the testator, and that the property devised must respond for damages growing out of the breach of the contract of the testator. It will be unnecessary to discuss this matter in detail. If the right of action exists against the devisee under sections 11 or 12 of chapter 59 of the Revised Statutes of 1874, by which she is made liable, as devisee or heir, to creditors of the devisor or intestate, to the full amount of the lands, tenements or hereditaments devised or descended to her, if the personal estate of the devisor or intestate is insufficient to discharge the just demands the remedy would be by action at common law. The action would lie against the devisee in the same manner it could be brought against an executor or administrator. In such suit the administrator could be joined with the devisee, as it is provided by statute may be done, or, the plaintiffs in error having first procured an allowance of their claim in the administration proceeding, and it appearing that there was not sufficient in the hands of the executor or administrator to satisfy such allowance, a separate suit or action could be maintained against the devisee, as provided in section 15 of said chapter.

We are of opinion that the decree of the circuit court was not warranted by the facts proved, and that no relief can be granted under the bill. The judgment of the Appellate Court is therefore affirmed, but its order will be so far modified that the circuit court is instructed to dismiss the bill without prejudice.

*Judgment reversed.*