EMERSON CALKINS *et al.*

*v.*

SAMUEL W. CALKINS *et al.*

*Opinion filed February 21, 1906.*

1. EVIDENCE—*what facts raise presumption of delivery of deed.* Recording of a deed by the grantor immediately after its execution, coupled with the facts that the grantor reserved a life estate, that the grantee, who was the grantor's son, was apprised of the execution of the deed and assented to its terms shortly after it had been recorded, and that the grantor subsequently stated to third parties, including the tax assessor, that the land belonged to the grantee, raises a presumption of delivery of the deed.

2. WITNESSES—*when complainant is not a competent witness.* The complainant in a bill to set aside a deed to his deceased son, whose heirs-at-law and personal representative are parties defendant, may testify as to his version of conversations testified to by witnesses, but it is incompetent for him to testify generally in support of the allegations of the bill.

3. PLEADING—*when omission to aver facts in original bill bears upon the credibility of such facts.* Where an amendment is made which, if the allegations thereof are true, entitles the complainant to the same relief prayed in the original bill but upon an entirely new theory, the omission to originally allege such facts, which, if true, must have been known to the complainant when the original bill was filed, and which are denied by the answer, is a circumstance to be considered in determining the truth of the allegations, there being nothing in the record to explain the omission.

4. DEEDS—*when deed made in consideration of future support will not be set aside.* A deed made in consideration of the future support of the grantors, the payment of a cash consideration and part of an encumbrance upon the land, will not be set aside after the death of the grantee, even though he failed to pay the cash consideration or his share of the encumbrance, where there was no fraud practiced by him upon the grantors in the execution of the deed and he carried out the agreement for the support of the grantors up to the time of his death.

5. SAME—*remedy of grantors where grantee's death prevents carrying out agreement for support.* If the grantors in a deed made in consideration of future support are damnified by the fact that such support has not been furnished since the grantee's death and that it will not be furnished in the future, they may file claims against the estate of the grantee in the county court and have their damages allowed.

APPEAL from the Circuit Court of LaSalle county; the Hon. S. C. STOUGH, Judge, presiding.

On May 2, 1903, Samuel W. Calkins and Fannie M. Calkins, his wife, filed a bill in the circuit court of LaSalle county to remove a cloud from their title to the north forty acres of the east half of the south-east quarter of section 24, town 33, north, range 2, east of the third principal meridian, in said county. The alleged cloud consisted of a quit-claim deed executed by the complainants on October 13, 1897, purporting to convey said tract of land to Frank B. Calkins. The consideration expressed in the deed was $1000, and "grantee is to stay with and help to care for the said grantors for and during their natural lives." The deed also contained the following clause: "And the said grantors hereby reserve the use and occupation and the right to the rents and profits of said land for and during their natural lives, and that said Frank B. Calkins is to assume the payment of one-half of the payment of a certain mortgage for $1000, and interest thereon, now on said east half of said south-east quarter of said section."

The bill alleges that Frank B. Calkins died on November 24, 1902, without having paid the $1000 mentioned as a consideration for the deed, or any part of the mortgage which, by the terms of the deed, he was to assume; that by reason of the non-performance on his part of the several obligations mentioned in the deed he has forfeited all his right and title to said premises which he obtained by virtue of said deed. The prayer is that the deed may be declared null and void and a cloud upon complainants' title, and removed and delivered up to be canceled.

Frank B. Calkins was never married. He left him surviving, as his only heirs, his father and mother, who are the complainants in the bill, and Emerson Calkins, Alanson Calkins, Rose Dimmick and Daisy Dickman, his brothers and sisters, who were made defendants to the bill. His

brother Emerson Calkins was appointed administrator of his estate by the probate court of LaSalle county, and was also made defendant as such administrator.

All of said defendants defaulted except Emerson Calkins, who, individually and as administrator, filed an answer denying the right to relief sought by the bill, to which the complainants replied. He also, as administrator, filed a cross-bill for the sale of said land to pay debts of the deceased, subject, however, to the reservations contained in the deed, making the complainants and his co-defendants in the original bill, together with two persons holding mortgages on the property, defendants to the cross-bill. Complainants in the original bill answered the cross-bill. Creditors of the estate of Frank B. Calkins, who had established their claims against said estate in the probate court, upon their motion were made defendants to the original bill, and by leave of court filed an intervening petition, praying that the land be sold or that they be given a lien thereon for the payment of their claims. On December 23, 1903, after the greater part of the testimony had been taken before the master, the complainants in the original bill amended their bill by inserting an allegation that the deed had never been delivered to Frank B. Calkins, and was not to be delivered until after the death of both grantors. Emerson Calkins, individually and as administrator, answered the amended bill.

The master to whom the cause was referred found that the deed was never delivered to Frank B. Calkins; that he did not pay the $1000 mentioned in the deed as part of the consideration, or one-half of the encumbrance of $1000 on the land, or any part thereof; that by reason of his death he did not stay with and help to care for the said grantors for and during their natural lives; and upon those findings based his conclusion that the deed was null and void, and should be canceled and set aside as a cloud upon the title of complainants. Emerson Calkins, individually and as administrator, and the intervening petitioners, filed objections

220—8

with the master to his report.  The master overruled the objections and filed his report, together with the depositions of the witnesses, in the circuit court.  It was there ordered that the objections stand as exceptions to the report.  A decree was entered overruling the exceptions, approving the master's report, adjudging the deed to be null and void, and ordering it canceled and set aside as a cloud upon complainants' title.  Emerson Calkins, individually and as administrator, and the intervening petitioners, have prosecuted an appeal to this court.

The family of Samuel W. Calkins, on October 13, 1897, consisted of himself, his wife, Frank B. Calkins, his youngest son, and Daisy Calkins, (now Dickman,) his youngest daughter.  The family lived on a farm consisting of eighty acres, in LaSalle county.  Samuel W. Calkins was then sixty-five years of age and unable to do active work on the farm.  Frank Calkins was about thirty years of age and unmarried.  He had always lived at home, assisting his father with the farm work, and for about ten years prior to his death had performed most of the work connected with the farm.  There were two other sons, who had married and left their father's home several years before.  On the date last above mentioned Samuel W. Calkins and wife went to Ottawa, in LaSalle county, and had an attorney prepare a deed conveying the north forty acres of their farm to Frank B. Calkins, subject to the conditions contained in the deed, and also a deed, with substantially the same conditions, conveying the south forty acres of the farm, which contained all the buildings, to their daughter Daisy Calkins. The deeds were properly executed and acknowledged by the grantors.  Frank B. Calkins was not present at the time the deed to him was drawn or executed.  The deeds were taken by Samuel W. Calkins, and on the same day were filed by him for record in the recorder's office of said county.  Ten days later they were delivered by the recorder to Samuel W. Calkins and taken to his home by him, where they were

afterwards kept in his trunk. Whether Frank B. Calkins knew that appellees intended to convey the north forty acres to him before the deed was brought home by his father, or whether he and his father had agreed upon the terms of the deed prior to its execution, is not disclosed by the evidence. He was, however, notified of the execution and recording of the deed, and its terms, at the time it was brought home by his father, and his subsequent actions show that he assented to its terms and intended to perform the obligations imposed upon him thereby.

Daisy Dickman testified that her deed was delivered to her immediately when brought home by her father, and that she placed it in her father's trunk with other things belonging to her, and that Frank's deed was placed in the trunk by her father. She also testified that this trunk was the receptacle for all papers and valuables belonging to the several members of the family, and that Frank B. Calkins kept notes, receipts and other papers in that trunk, although the trunk was kept locked and Samuel W. Calkins carried the key, and it was necessary to obtain the key from him in order to open the trunk.

After the execution of the deed to him Frank B. Calkins managed the farm and became responsible for debts incurred for necessaries for the family. A number of the claims established against his estate are for groceries, dry goods, medicines and the like, used by Samuel W. Calkins and wife and by Daisy Dickman, both before and after her marriage. When members of the family purchased articles at the stores on credit they usually charged such articles to Frank B. Calkins, and he paid the bills. He also purchased and paid for seed, hired and paid men for working on the farm, and sold the produce and collected the money therefor, some of which (the amount or proportion not being shown by competent evidence) was turned over by him to Samuel W. Calkins. He also rented and farmed other land belonging to other persons. After his death certain personal property on

the farm, including grain on hand, was found and adjudged by the county court to belong to his estate.

HUTTMANN, BUTTERS & CARR, for appellants.

M. T. MOLONEY, and JAMES J. CONWAY, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The evidence relied upon by appellees to prove non-delivery of the deed to Frank B. Calkins consists of the testimony of their daughter, Daisy Dickman, and her husband, Herman Dickman, and of appellees' son Alanson Calkins, to the effect that Frank B. Calkins stated to them at various times that he was to get a deed to the north forty acres of the farm after the death of his parents if he paid his father $1500 and took care of his parents during the remainder of their lives; also the testimony of Daisy Dickman, to the effect that she was present at her father's house when her father brought the deed home, and that he told Frank that he could have the deed after the death of the parents if he performed the obligations imposed on him by the deed and made the cash payments, and that Samuel W. Calkins then placed the deed in his trunk and kept it there, without delivering it to Frank, until after the death of the latter.

A number of witnesses testified, on behalf of appellants, that Samuel W. Calkins stated to them that he had given a deed to the north forty acres of his farm to Frank B. Calkins, and that Frank owned the land. One of these witnesses was the tax assessor of the township in which the land was situated; another a man named West, who appears to be entirely disinterested; and another one of the creditors of Frank B. Calkins who had established a claim against his estate. Emerson Calkins also testified to the same admission by Samuel W. Calkins.

Although the testimony of Alanson Calkins and Daisy Dickman, witnesses for appellees, was against their legal existing interest as heirs of Frank B. Calkins, yet their ex-

pectant interest as children of appellees, to whom the land would descend in case of the death of appellees without otherwise disposing of the property, was apparently regarded by them as more valuable than their interest in the land as heirs of Frank B. Calkins, because as heirs of the latter their interest was subject to the debts established against his estate, which nearly equaled the value of the interest in the land conveyed to him by his deed from Samuel W. Calkins and wife. If the deed stands they get practically nothing from the land. If it is set aside they may succeed to a substantial part of the realty.

Daisy Dickman and Alanson Calkins were parties defendant. Prior to the time they testified, a decree of default had been entered against them, by which it was ordered that the bill should stand as confessed by them. It is apparent from their testimony and from that of Herman Dickman that each of the three, whatever their interests in the controversy may have been on the face of the record, in fact reasoned that their interests would be better served by having the deed canceled and set aside than by having it adjudged a valid conveyance. It is evident from the testimony of all the witnesses who were cognizant of the facts, that the arrangement was that Frank B. Calkins was to have the land after the death of his parents. The pivotal question on this branch of the bill is whether the deed was delivered. For the purpose of establishing, by each of the three witnesses for the complainants named above, that there was to be no delivery of the deed until after the death of the parents, and that there was, in fact, no delivery of the deed, recourse was had to leading and suggestive interrogatories, and appellants preserved their rights in reference thereto. For instance, Herman Dickman, after testifying to a conversation with Frank B. Calkins in which he said Frank told him he was to have the deed after the old folks' death and that Frank never told him whether or not his father had delivered the deed to him, was asked: "Q. Do you remember if you ever saw a deed to

this forty acres of land?—A. Mrs. Calkins showed me a deed, handed it up and said it is Frank's deed.  Q. When was it to be his?—A. After the old folks' death.  Q. Was that statement made there at that time by the old man to you?—A. Yes, sir."

Daisy Dickman testified that the deed to her and the deed to Frank were brought home by the father on the same day; that her deed was delivered to her; that her father told Frank that "if he staid at home and took care of him and paid him that $1500, when my father and mother was gone he should have that forty acres."  Following the testimony which we have just quoted, this witness was asked: "Q. Was that deed to be given up to that time?—A. Not until after the death of my father and mother.  Q. Then it was to be given up?—A. Yes, sir."  It further appears from the testimony of this witness that her deed, which she says was delivered, and Frank's deed, which she says was not delivered, were thereafter both kept in the father's trunk.  The objectionable method pursued in eliciting portions of the testimony from complainants' witnesses lessens the weight of those portions thereof.

Emerson Calkins, the administrator, testified that he was present on one occasion in the office of an attorney at a time when Frank B. Calkins contemplated borrowing money on his interest in this land, and he swears that Frank at that time had the deed in his possession, but that the deed was folded up and that the witness merely saw the outside of it, or, as he expressed it, "the head of the deed."  It is shown, however, that Frank B. Calkins never owned or claimed to own any interest in land other than the interest which it is claimed he owned in this forty-acre tract.  Appellees urge that it does not appear that this was the same deed executed by Samuel W. Calkins, for the reason that the witness did not read it and therefore could not know its contents.  He did not have an opportunity to examine the deed at the time he testified and state from that inspection whether it was the

same deed that he had seen in the possession of Frank B. Calkins, as Samuel W. Calkins had delivered the original deed to one of his attorneys shortly before the bill herein was filed, and the same was, before the witness testified, lost. We think, however, in view of the fact that Frank B. Calkins could have had possession of but one deed to himself, that it is a fair conclusion, if the testimony of Emerson Calkins is to be believed, that Frank B. Calkins had possession of that deed at the time in question when he was seeking to borrow money.

Samuel W. Calkins, one of the appellees, was called in rebuttal. It was proper for him to give his version of certain of his own conversations and transactions which had been testified to by witnesses called in behalf of the defendants. (Hurd's Stat. 1903, chap. 51, sec. 2.) This witness, however, testified generally in support of the averments of the bill. His testimony, other than in reference to the specific conversations and transactions above mentioned, was improper and should not have been taken.

Such testimony of this witness, plainly incompetent as it was, could have been taken by appellees only in view of the possibility that the master, though aware of its incompetency, might unconsciously be influenced thereby, or that it might present to the master a complete history of the various transactions, so that he could see that the testimony of the several witnesses for complainants was harmonious therewith.

In considering the reasonableness of the evidence of those witnesses whose testimony tended to show that the deed was not to be delivered until the death of both parents, it is to be observed that the contract, as disclosed by the testimony of such witnesses, did not, in fact, provide for any delivery of the deed to Frank B. Calkins at all. It was not left with any person to be passed over to him, nor was he authorized in any manner to obtain possession of it, if their testimony be true.

All the circumstances surrounding the transaction between Samuel W. Calkins and Frank B. Calkins point to the delivery of the deed. The deed itself indicates the intention of the grantors to deliver it during their lifetime. A life estate is reserved to the grantors. If it had not been the intention to deliver the deed during the lifetime of the grantors, that reservation was wholly unnecessary and no purpose would be served by inserting it in the deed. The deed was recorded immediately after its execution, which is *prima facie* evidence of its delivery. (*Valter* v. *Blavka,* 195 Ill. 610; *Clark* v. *Harper,* 215 id. 24.) The deed was placed by Samuel W. Calkins in a trunk where Frank B. Calkins kept his valuable papers. The original bill made no reference to the claim that the deed had not been delivered. That charge was inserted as an amendment several months after the original bill had been filed, after the issues had been made up and during the taking of testimony before the master. These circumstances, when taken in connection with the admissions made by Samuel W. Calkins, and the fact that the grantee knew of the execution and recording of the deed and its terms immediately after it was recorded and assented to those terms and entered upon the performance of the obligations imposed upon him thereby, raise a strong presumption in favor of the delivery of the deed, and we are of opinion that such presumption is not overcome by the evidence found in this record. We think the master's finding on this issue was clearly wrong, and that the decree, in so far as it is based on such finding, is erroneous. While it is true that a bill may be filed with a double aspect and that the various parts thereof need not be consistent with each other, (*Henderson* v. *Harness,* 184 Ill. 520,) still, where a bill is first filed upon one theory and later an amendment is added which, if the allegations of fact therein be true, entitles the complainant to the same relief sought in the original bill but upon grounds not disclosed by the original bill, and where the allegations of fact set up by the amendment,

if true, must have been fully known to the complainant at the time of the filing of the original bill, the omission to aver such alleged facts at that time is a circumstance to be taken into consideration in determining whether or not the statements of fact contained in the amendment are true, when they are denied by the answer, no explanation for their omission from the original bill appearing in the record.

We are of the opinion, from all the evidence in the case, that the theory that this deed was never delivered to Frank B. Calkins is one that had its origin at a date subsequent to the filing of the bill herein, and that it was born of the desire of Samuel W. Calkins, Alanson Calkins, Daisy Dickman and Herman Dickman, her husband, to prevent the application of the property involved in this suit to the satisfaction of the debts of the deceased son and brother.

It remains to determine whether other findings of the master are sufficient to support the decree.

The consideration expressed in the deed is $1000 and future support of the grantors during the remainder of their lives. It is not claimed that there was any fraud practiced on the grantors by the grantee in obtaining the execution of the deed, therefore proof of the failure of the grantee to pay the $1000 would not be ground for avoiding or canceling the deed. *Rendleman* v. *Rendleman,* 156 Ill. 568.

Neither can the deed be avoided or set aside for the reason that the grantee has been prevented, by reason of his death, from carrying out his contract to furnish support to the grantors during their lifetime, because where, as here, he complied with the contract up to the time of his death, there can be no presumption of fraud on the part of the grantee. *Stebbins* v. *Petty,* 209 Ill. 291; *Seymour* v. *Belding,* 83 id. 222.

The grantee in the deed assumed the payment of a mortgage on the land. It was shown that the mortgage had not been paid. Failure to pay the mortgage assumed could not affect the conveyance of the land. In case the grantors were

compelled to pay the indebtedness, they would have a remedy over against the grantee and could resort to the land for reimbursement. That, however, would be the extent of the relief to which they would be entitled.

The complainants in the original bill failed to establish any sufficient ground for avoiding the deed to Frank B. Calkins, and the decree was therefore erroneous.

It was proved before the master that there was a deficiency in the personal estate of Frank B. Calkins, and the administrator, by his cross-bill, sought to have the land sold subject to the life estate of Samuel W. Calkins and wife and subject to the mortgage liens thereon. Inasmuch as the complainants in the original bill did not establish any right to the relief sought by them because the title to the land passed to Frank B. Calkins by the deed of October 13, 1897, subject to the life estate of the grantors and the mortgage liens on said land, the cross-complainant was entitled to the relief sought by his cross-bill.

If the grantors in the deed to Frank B. Calkins have been damnified by the fact that the conditions of the deed which were to be performed by him have not been complied with since his death, and by the fact, if such be the fact, that they cannot be complied with in the future, they may, as pointed out in *Campbell* v. *Potter,* 147 Ill. 576, file claims against the estate of the deceased in the county court and have such damages there allowed.

The decree of the circuit court will be reversed and the cause will be remanded to that court, with directions to dismiss the original bill, as amended, for want of equity and to grant the relief sought by the cross-bill.

*Reversed and remanded, with directions.*