**Clifford W. GARDNER**

v.

**The ATCHISON, TOPEKA AND SANTA
FE RAILWAY COMPANY.**

**Nos. 11383, 11384.**

United States Court of Appeals
Seventh Circuit.

Sept. 29, 1955.

Floyd J. Stuppi, Chicago, Ill., Philip E.
von Ammon, Phoenix, Ariz., for Atchi-
son, Topeka and Santa Fe Ry. Co.

Bernard W. Vinissky, Chicago, Ill., for
Clifford W. Gardner.

Before DUFFY, Chief Judge, and MA-
JOR and SWAIM, Circuit Judges.

MAJOR, Circuit Judge.

Albert C. Amborn, an employee of the
defendant railway company, on May 17,
1946 employed William Tautges, an at-
torney of Minneapolis, Minnesota, and
Frank E. McAllister, plaintiff's decedent,
an attorney of the State of Illinois, to re-
cover damages for personal injuries sus-
tained as a result of the railway com-
pany's negligence, by which the attor-
neys were to receive for their services
one-third of the amount recovered. A
complaint was filed in the United States
District Court for the Northern District

of Illinois, against the railway company, by McAllister on behalf of Amborn. On May 23, 1946, McAllister served on the defendant a notice of attorney's lien under Section 14, Chapter 13, Ill.Rev.Stat. On January 21, 1947, Julius S. Neale, a Chicago attorney, under circumstances subsequently related was substituted for McAllister as an attorney for Amborn. On the following day the trial of the action commenced in the district court, in which Amborn was represented by Tautges and Neale. The trial resulted in a jury disagreement. In September 1947, Amborn retained a law firm in Topeka, Kansas, to handle his claim against the railway company. Prior to entering this retainer, Amborn wrote registered letters to Tautges and Neale discharging them as his counsel. Thereafter, an action was filed in the State court at Topeka, a settlement of the claim consummated with the railway company and judgment entered in behalf of Amborn in the amount of $21,000, which was satisfied by the delivery to Amborn of a draft in that amount payable to his order.

McAllister died on April 26, 1947, and the instant action, predicated upon the Attorney's Lien Act, was instituted by his administrator for the recovery of $7,000, one-third of the amount which defendant paid Amborn in settlement of his claim. Plaintiff's case is predicated upon the theory, as alleged in the complaint and as stated in his brief, that McAllister was wrongfully discharged by Amborn and is, therefore, under Illinois law entitled to recover the fee provided in the retainer contract. Defendant denies that McAllister was wrongfully discharged by Amborn and, in any event, contends that the retainer contract was void from its inception because it was obtained in a manner contrary to public policy in the State of Illinois and the ethics of the legal profession, that is, that it was procured by solicitation on the part of the attorneys who made a champertous offer of a valuable consideration as an inducement to its execution.

The case was heard in part by District Judge Walter J. La Buy, without a jury. At that hearing plaintiff introduced only the testimony of attorney Neale, together with a number of exhibits, and defendant introduced only the testimony of Amborn (the client and injured employee) and also a number of exhibits. The testimony of Amborn was heard subject to plaintiff's objection that he was disqualified as a witness under Section 2 of the Illinois Evidence and Depositions Act, Chapter 51, Ill.Rev.Stat.1953, which excludes the testimony of a party or person directly interested in the outcome of any civil action which is prosecuted or defended by the administrator of a deceased person. After both sides had rested their case, the court in a memorandum opinion held that Amborn was disqualified as a witness. No motion, however, was made by plaintiff to strike such testimony, and it appears in the record.

■ Judge La Buy in his memorandum opinion held that plaintiff was entitled to recover only for services rendered by McAllister to April 26, 1947, the date of his death, and that plaintiff would be required to present evidence as to the fair value of such services. The case was subsequently reassigned to District Judge Win G. Knoch, who upon a hearing refused to consider plaintiff's contention that he was entitled to recover the amount specified in the retainer contract but followed the ruling of Judge La Buy that the only recovery which could be had was for the reasonable value of the services rendered by McAllister. Plaintiff was given the opportunity to prove the value of such services but declined to do so. Thereupon, Judge Knoch on October 27, 1954 entered a judgment in favor of the defendant. From this judgment plaintiff appeals in No. 11383. Defendant, in No. 11384, files what it designates as a cross-appeal, by which it seeks to review the ruling of Judge La Buy that Amborn was disqualified as a witness and his exclusion of evidence introduced to prove that the retainer contract was champertous and

void. Plaintiff suggests that the cross-appeal should be dismissed inasmuch as it relates only to alleged errors committed by the court in the course of the proceeding and is not taken from any part of the final judgment. Technically we think plaintiff's position is correct although of little consequence because defendant has a right in this court to support the judgment in its favor on any legal basis disclosed by the record. Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224; Cold Metal Process Co. v. McLouth Steel Corporation, 6 Cir., 126 F.2d 185, 189; Reinstine v. Rosenfield, 7 Cir., 111 F.2d 892, 894.

The greater portion of Judge La Buy's memorandum opinion relates to the question as to whether Amborn was disqualified as a witness by reason of the Illinois Evidence Act heretofore mentioned. Having concluded that Amborn was disqualified, no consideration was given to his testimony upon which defendant in the main relied in support of its contention that the retainer contract was void for reasons previously stated. In the view which we take of the case we find it unnecessary to decide the issue as to the validity of the contract. Consequently, we need not rule upon the admissibility of Amborn's testimony in its entirety. However, for reasons subsequently shown, the portion of his testimony relating to the substitution of Neale for McAllister as one of Amborn's attorneys was clearly admissible.

■ The Illinois cases make it plain that a lien acquired by an attorney under the Illinois Act cannot be impaired by his wrongful discharge at the hands of his client. See Goldberg v. Perlmutter, 308 Ill.App. 84, 88, 31 N.E.2d 333; Caruso v. Pelling, 271 Ill.App. 318, and Tulka v. Chicago City Railway Co., 259 Ill.App. 234, 238. The critical issue in the instant case, and it is factual, is whether McAllister was wrongfully discharged by Amborn, his client. Plaintiff places much stress upon a statement contained in Judge La Buy's memorandum, which he asserts is a finding in his favor on this issue. After stating a rule announced by this court in Roe v. Sears, Roebuck & Co., 132 F.2d 829, Judge La Buy stated: "It is also established that discharge of an attorney by the client without good cause does not defeat a claim for attorney's fees. See cases cited in footnote in Roe v. Sears, Roebuck & Co., supra. There is no evidence to show that the withdrawal of McAllister was for good cause and therefore such withdrawal cannot operate to defeat the claim for services rendered to the date of death." There is no other statement in his opinion which bears upon any factual issue. Evidently the first sentence in the quoted statement announces only a principle of law. While the first part of the last sentence appears to be a statement of fact, we are in doubt as to what it means. If McAllister withdrew from the case without good cause, we know of no legal theory upon which there could be a recovery. However, giving the plaintiff the benefit of all doubt as to what was meant by assuming that it was intended to find that McAllister was wrongfully discharged by Amborn, we think that such a finding is without substantial support in the record.

■ As previously noted, the only testimony offered was that of Neale by plaintiff and Amborn by defendant. Such being the case, the sole testimony regarding the circumstances relative to the substitution of Neale for McAllister came from these two witnesses. Neale gave his version of what transpired at his office about January 20, 1947, in the presence of Tautges and Amborn. He testified relative to an agreement which he filed in court which provided for the substitution of attorneys and which was offered in evidence by plaintiff as exhibit No. 7. Under these circumstances, Amborn was within the exception provided in subd. 4 of § 2 of the Evidence Act and was competent to give his version of what occurred in Neale's office. See Bundy v. West, 297 Ill. 238, 243, 130 N.E. 709; Calkins v. Calkins, 220 Ill. 111, 119, 77 N.E. 102, and Crow v. Blaser, 335 Ill. App. 281, 285, 81 N.E.2d 742.

In evaluating the circumstances which led up to and surrounded the substitution of attorneys, it must be remembered that plaintiff's leading counsel was Tautges, of Minneapolis, Minnesota, and it is perfectly plain that he was the directing genius in the case. On one occasion Amborn was instructed by Tautges to carry on all correspondence with him rather than with McAllister. Neale testified that Tautges and Amborn were in his office together about January 20, 1947, and that "they requested me to enter my appearance" in Amborn's behalf. The witness told Amborn, so he stated, that he would not do so until McAllister was "discharged or withdrew from the case," and that Amborn said "to discharge McAllister." Thereupon, Amborn signed the substitution agreement, which Neale took to the office of McAllister and which was signed by the latter and filed in court by Neale. On cross-examination Neale was asked, "The fact is, is it not, that Mr. Tautges announced to you and Mr. Amborn that McAllister was fired; isn't that correct?" to which he replied, "It was a general discussion. I don't recall who said what."

Amborn testified that upon request he came to Chicago and met Tautges and his wife at the Sherman Hotel, at which time Tautges stated that he had decided to take Neale as an associate attorney. The witness stated that he had never talked to McAllister, in fact had never seen him, that he was not dissatisfied with the services of McAllister and never requested him to withdraw from the case. He further stated that when he arrived at Neale's office the paper (substitution agreement) was drawn up and that he signed it at the request of Tautges.

To find under these circumstances that Amborn was responsible either with or without cause for the discharge of McAllister is to ignore the realities of the situation. Amborn didn't propose or initiate anything; the most that can be said is that he in ignorance of the situation assented to the removal of Mc-

Allister and the substitution of Neale. Any doubt on this score is removed by the document filed in court (plaintiff's exhibit No. 7) entitled "Substitution of Attorneys." It reads, "I hereby withdraw as attorney for plaintiff in the above entitled action, and consent to the substitution of Julius Neale as such attorney in my place and stead. /S/Frank E. McAllister," and "I hearby enter my appearance as attorney for the plaintiff in the above entitled cause of action. /S/Julius S. Neale," and "I hereby consent to the above withdrawal and substitution of my attorneys in this cause of action. /S/Albert C. Amborn, Plaintiff."

Thus, it is clearly revealed that the substitution proposed by Tautges was consented to by both McAllister and Amborn. We think both the court and the railway company had a right to rely upon this substitution agreement as the voluntary withdrawal of McAllister and his consent to the substitution of Neale as attorney for the plaintiff. The agreement for legal services and fees between Amborn and McAllister was for an entire service to be rendered by the prosecution of Amborn's claim against the railway company to final judgment or settlement. That agreement was terminated by the voluntary act of the parties and in a manner evidently satisfactory to both. Under such circumstances we do not see how McAllister in his lifetime could have been heard, or his administrator now, to assert that McAllister was forced out of the case by the wrongful act of Amborn. If McAllister had notified the railway company in writing that he had with the consent of Amborn withdrawn from the case, we doubt if it could be seriously contended but that a termination of the agreement between McAllister and Amborn would have been effected and McAllister's lien predicated thereon destroyed. The substitution agreement filed in court effected the same result.

Although not too plain, it appears to have been the view of the district court that because McAllister died before

settlement with the railway company, plaintiff was entitled to recover on a *quantum meruit* basis for services rendered by McAllister during his lifetime. Reliance was placed upon the decision by this court in Roe v. Sears, Roebuck & Co., 132 F.2d 829. In that case plaintiff sought recovery on a *quantum meruit* basis, which was allowed on the theory that the attorney-client relationship was terminated by death of the attorney and, therefore, without fault of either of the parties. In the instant case, however, plaintiff does not seek recovery on the *quantum meruit* theory; in fact, he refused when afforded the opportunity to offer evidence of the reasonable value of McAllister's services. Recovery is sought for the entire amount of fees provided in the retainer contract solely on the basis that McAllister was wrongfully discharged by Amborn. In view of what we have said, there can be no recovery on that theory, and the Illinois decisions upon which plaintiff relies are of no aid.

The judgment is
Affirmed.