(No. 19990.—

C. Emmet Smith, Appellant, *vs.* Luella F. Smith, Appellee.

*Opinion filed June 20, 1930—Rehearing denied October 11, 1930.*

Martin M. Gross, for appellant.

Henry M. Seligman, for appellee.

Mr. Justice DeYoung delivered the opinion of the court:

C. Emmet Smith filed a bill in the circuit court of Cook county against Luella F. Smith for the specific performance of a contract for the sale of a parcel of real estate by the

defendant to the complainant. The defendant answered the bill, a replication was filed to the answer and the cause was referred to a master in chancery who, by his report, recommended specific performance in substantial conformity with the prayer of the bill. The defendant filed objections and later took exceptions to the master's report. The exceptions were sustained by the chancellor and a decree was rendered dismissing the bill for want of equity. The complainant prosecutes this appeal.

Luella F. Smith, the appellee, owned the property known as 2011 and 2013 Sedgwick street in the city of Chicago, and on June 8, 1927, signed the contract which is the basis of this suit. By its provisions the appellee agreed to sell and convey the property to the appellant for $31,000, subject to a first mortgage for $12,000, due in five years, which the vendor was required to place upon the property at her cost and expense. The remainder of the purchase price was to be paid as follows: $500 as earnest money; $1500 upon the delivery of the deed, and $17,000 by a second mortgage on the property due on or before five years. The vendor agreed to extend the time of payment of the junior mortgage for a like period from its maturity. The contract and the earnest money, it was provided, should be held by John Pelc & Co., the agents, for the mutual benefit of the parties. Notwithstanding this provision the agents filed the contract for record within a few days after it was executed.

Three witnesses, including the appellant, testified in support of the allegations of the bill. Their testimony, in substance, is as follows: Joseph Kisch, a salesman employed by John Pelc & Co., called upon the appellee and inquired whether the property was for sale. She answered that it was, and informed him that it yielded an income of $157 per month and was mortgaged for $1500. She asked whether he could obtain $31,000 for the property. He answered that the income did not justify such a price, but that he would ascertain what could be done. About five

days later he returned and told her he had a customer who would probably purchase the property, but who could make an initial payment of only $2000. She thought the sum too small in such a transaction. Kisch then called upon the appellant and the latter investigated the property. Upon his return, Kisch told the appellee that he was offered $31,000, $2000 of which was to be paid in cash and the remainder, $29,000, in two mortgages upon the property, the first for $12,000 and the second for $17,000. She requested him to draw the contract and obtain the earnest money. These things were done, and accompanied by John Pelc he again called upon the appellee. Her sister Gertrude O. Nelson was present and the contract was read to them. After certain of its provisions had been explained, the appellee signed the contract at Kisch's request. Kisch and Pelc then departed. In a short time, George A. Nelson, a nephew of the appellee, asked them to return to her home, and both complied with the request. The nephew said that the contract was unsatisfactory and that a new one requiring a larger initial payment should be drawn because he was to receive a loan of $2000 out of it. Neither Kisch nor Pelc discovered that the appellee exhibited any signs of illness at the time she signed the contract. The appellant claimed that he owned equities of redemption in real property worth from $80,000 to $100,000.

The appellee was sixty-six years of age and had never married. She testified that in April, 1927, Kisch first inquired whether her property was for sale and she answered in the negative; that about a week later he asked what she would take for it and she said $35,000; that he called a third time, told her the price was too high and suggested $32,500; that later he reported he was able to get $31,000, of which $14,000 would be paid in money and $17,000 secured by a mortgage on the property and that the agent's commission would be three per cent of the purchase price or $930; that she told him she desired to confer with cer-

tain relatives before she entered into an agreement to sell the property; that he returned about a week later and in the presence of her nephew she told Kisch that a second mortgage, which he at one time suggested, would not be accepted, and that he assented to this condition. It further appears from the appellee's testimony that Kisch called again on June 8, early in the afternoon, when she informed him that she had just suffered a surgical operation upon her nose and that, as a consequence, she was indisposed; that he then told her additional earnest money would be paid within two or three days and he would have a contract drawn embodying the terms upon which they had verbally agreed; that Kisch returned in about an hour accompanied by Pelc; that the latter drew a paper from his pocket, gave it to her and asked her whether she could read it; that she read it but failed to discover a provision concerning a mortgage for $17,000 because, while she was reading, the agents distracted her attention by inquiring whether a marble top table she had was for sale; that Kisch told her there would be an item of expense amounting to $420 for negotiating the first mortgage which he had overlooked; that she reminded him that it was understood $930 was to be the sum of her expense; that, after the agents left, her nephew, upon examining a copy of the contract, discovered the provision with respect to the mortgages, and he immediately called upon the agents and asked them to return to her house; that they appeared in a short time, followed by the appellant; that her attorney, former Judge Bernard P. Barasa, also was called and he was present at the conference; that her nephew told the agents the contract had not been drawn as they had represented because there was to be only one mortgage; that Pelc replied the contract contained the agreements as made; that Judge Barasa thereupon told the appellant he could not enforce the contract and asked him to cancel it, to which

the appellant replied that he had always been able to meet his obligations, and that an appointment was made to meet in Judge Barasa's office on the following Friday to discuss the matter.

Gertrude O. Nelson testified that at the time the contract was signed, her sister, the appellee, had a hemorrhage of the nose, her face was flushed, she was nervous and hysterical and could hardly breathe; that she asked Pelc to read the contract to the appellee, but that he wrote a few figures, gave her his fountain pen and she then signed the contract; that she, the witness, did not read the contract because she did not have her glasses; that Kisch said he would return in a few days with the money, and that when the agents returned later in the day, her son told them that the contract did not represent the agreements of the appellee and that it was inequitable. Judge Barasa, the witness added, told the appellant he could not enforce such a contract.

George A. Nelson, the nephew of the appellee, testified that after the contract had been signed, Kisch and Pelc returned to her house at his request; that he there told them that by the contract as drawn she would receive only $2000 in money, while she was obliged to pay $1500 to retire the mortgage on the property, $930 as commission for making the sale and $420 for negotiating the proposed first mortgage, a total of $2850, leaving her, so far as money was concerned, a deficit of $850 in the transaction; that they ought to return the contract to the appellee because, when she signed it, she was in no condition to appreciate its effect, she executed it under duress and it was not the agreement she had made; that a discussion with respect to the contract ensued and the witness finally suggested that Judge Barasa should be consulted; that the agents concurred in the suggestion and that Judge Barasa, after examining the contract, told the appellant he could not expect to enforce the contract and advised caution on his part. Nelson ad-

mitted that he expected to obtain a loan of $2000 from the appellee for use in his business of greyhound racing.

Bernard P. Barasa was a neighbor of the appellee. He testified that after she had consulted him and he had examined the contract, he told the appellant that she understood she was to receive $14,000 in money and a mortgage for $17,000; that instead the contract required her to place a first mortgage of $12,000 on the property at her expense and accept a second mortgage for $17,000, due in five years, which might be renewed, at the purchaser's election, for a like period; that if the first mortgage should not be paid, the appellee would be unable to protect her second mortgage; that in no event should she be required to pay the expense of negotiating the first mortgage and that she should receive, as the initial payment, a substantial sum of money; that the appellant thereupon stated he would do what the witness thought was fair and equitable; that a meeting on the next day at the latter's office for the purpose of making a new contract was arranged, and that he heard nothing further from the appellant until a few days later when an attorney representing the latter inquired whether the appellee proposed to perform the contract on her part.

Dr. W. M. Stearns testified that on June 8, 1927, he removed a polypus tumor from the region between the appellee's nostril and throat; that the immediate effect of the operation was a considerable hemorrhage; that hemorrhages may occur several hours after such an operation, and that the appellee was nervous and apprehensive on the morning of that day.

On rebuttal, Kisch, Pelc and the appellant again testified. Kisch denied that he told the appellee he could obtain $14,000 in money and a first mortgage for $17,000. Pelc asserted that, before the contract was signed, he explained its terms to the appellee and told her that $420 would be the commission to be paid by her for making the first mortgage. He admitted that the appellee told him she desired

to make a loan of $2000 to her nephew. The appellant denied that he told Judge Barasa he would do what the latter thought was fair and equitable in the transaction.

The appellant contends that the appellee's testimony concerning conversations with Kisch and Pelc in the absence of the appellant was incompetent and should have been excluded. Kisch and Pelc, while ostensibly the agents of the appellee, were in fact the agents of the appellant for they were active in his behalf throughout the transaction. Their concern seemed to be, not the interest of the appellee, but of the appellant; and although they were charged with the duty of holding the contract for the benefit of the parties concerned, they filed it for record within a few days after it was signed. Acting as the appellant's agents the testimony was competent. If, however, they were the agents of the appellee exclusively, and the testimony was on that account inadmissible, yet the presumption is that the chancellor acted only on the competent evidence. (*Kennard* v. *Curran,* 239 Ill. 122; *Champion* v. *McCarthy,* 228 id. 87). In a chancery case, the whole record, including all the evidence offered, is before this court on appeal or writ of error, and it will be presumed that all the incompetent evidence was rejected and all the competent evidence was considered on the final hearing. If there is competent evidence in the record sufficient to sustain the decree, it will be affirmed; if not it will be reversed. *Treleaven* v. *Dixon,* 119 Ill. 548.

The principal contention made by the appellant is that the contract was fairly and understandingly entered into and hence that the circuit court erred in denying the appellant the relief sought. The specific performance of a contract will not be decreed unless the contract was made with perfect fairness and without misapprehension, misrepresentation or oppression. To entitle a party to such a decree, the contract must be reasonable, fair and equitable. If it is wanting in any of these particulars, specific per-

formance will not be granted, for it is only upon the principle that it is unjust and inequitable to permit the contract to remain unexecuted, that a court of chancery assumes jurisdiction to enforce it. *Tamm* v. *Lavalle,* 92 Ill. 263; *Woods* v. *Evans,* 113 id. 186; *Hatch* v. *Kizer,* 140 id. 583; *Keating* v. *Frint,* 291 id. 423; *Andrews* v. *Mohrenstecher,* 295 id. 109.

The appellant's witnesses testified that the contract was explained to the appellee and that she read it. The appellee, on the contrary, testified that the contract was presented to her immediately after she suffered a surgical operation and at a time when she was not in condition to read it understandingly; that she did not discover the provision concerning the second mortgage and that her mind was diverted to another subject by the agents when she attempted to read the contract. The testimony of the appellee with respect to her physical condition was corroborated by her surgeon, her sister and her nephew.

The preponderance of the evidence shows that the appellee understood she would receive a purchase money mortgage, necessarily a first lien on the property conveyed, for $17,000. The remainder of the purchase price, $14,000, if paid in money as she expected, would enable her to retire the existing mortgage on the property, defray the expenses attendant upon the sale and make the contemplated loan of $2000 to her nephew. Kisch and Pelc knew at the time the contract was signed that the appellee intended to make that loan. When her nephew examined a copy of the contract, shortly after the original was executed, and informed her that provision was made for the payment of only $2000 in money and that the remainder would be represented by two mortgages on the property, the agents were immediately requested to return to her home. Kisch, Pelc and the appellant were there informed that the contract did not embody the terms of the sale. The contract itself tends to support this charge. The purchase price was

$31,000, of which only $2000 was to be paid in money and two mortgages were to be given for the remainder. The first mortgage, to be made for $12,000, she was to take on account of the purchase price and yet, the contract required her, and not the purchaser, to execute it. She was not only to part with the title to the property upon a small initial payment, but she, the vendor, was also personally to create and hence to incur liability for an indebtedness to which the purchaser, by the nature of the transaction, should subject himself. The appellee, in addition, was bound to pay the expense of making the first mortgage, an item which, the evidence shows, would amount to $420. The second mortgage for $17,000, to be due in five years, was subject to renewal for a like period, making its maturity at the purchaser's election, ten years after the sale was effected. Apart from the loan the appellee desired to make to her nephew, the payment of the existing mortgage for $1500 and of the commissions to the agents upon the sale and the first mortgage would require more money than the contract obliged the purchaser to pay. To make these disbursements and the contemplated loan to her nephew would compel her to sell the proposed first mortgage. If the purchaser should make default in payment of the interest on or the principal of that mortgage and a foreclosure suit by a third party should follow, it would be extremely difficult if not impossible for the appellee to protect her interest in the property represented by the second mortgage for $17,000. When all the facts and circumstances are considered, the conclusion is justified that the appellee signed the contract under a misapprehension of its terms and that the contract is unfair and inequitable. In such a situation, specific performance of the contract should not be required, and the chancellor properly exercised his discretion in denying the relief sought.

The decree of the circuit court is affirmed.

*Decree affirmed.*