(No. 29427.—

HAZEL C. NEWMAN, Appellant, *vs.* CHARLES D. YOUNGBLOOD *et al.*, Appellees.

*Opinion filed Sept. 18, 1946—Rehearing denied November 14, 1946.*

618

ORR, LEWIS & ORR, and TAGE JORANSON, (WARREN H. ORR, WALLACE W. ORR, and HASKELL F. LAMM, of counsel,) all of Chicago, for appellant.

WM. E. RODRIGUEZ, and RICHARD P. GARRETT, both of Chicago, for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is a direct appeal, involving a freehold, to this court from a decree entered October 18, 1945, in the circuit court of Cook county and an amended decree entered November 6, 1945, both of which dismissed plaintiff's complaint and amendment thereto for want of equity. The cause was submitted to a master in chancery and the decree approves the master's report and overrules the exceptions filed thereto. In the complaint as amended plaintiff is seeking partition of certain real estate allegedly possessed by May R. Kenney Youngblood at her death.

The deceased May R. Kenney Youngblood was married twice during her lifetime and upon the death of her first husband she inherited his share of a paint business in which they were interested together, as well as two parcels of improved real estate located in Cook county, Illinois, and a tract of land in the State of Wyoming, which is not here in question.

On May 22, 1943, subsequent to the death of her first husband, the deceased married Charles D. Youngblood, one of the defendants herein, who owned certain real estate in Cook county, Illinois, and in Lake county, Indiana.

From December 6, 1943, to January 15, 1944, May R. Kenney Youngblood was confined to the Mercy hospital for an operation from which she never fully recovered. Her condition after her discharge from the hospital became such that she was confined to her home entirely from April 19, 1944, until the time of her death on May 31, 1944.

Sometime during the latter part of January or the first part of February, 1944, in an attempt to iron out their marital difficulties, the deceased and her husband, Charles D. Youngblood, decided to make joint wills in which each would leave all of his property, both real and personal, to the other. To put said plan in operation they visited the offices of William E. Rodriguez, an attorney in Chicago,

Illinois, and one of the defendants herein, on February 6, 1944. Rodriguez suggested that the best way for them to effectuate the purpose they had in mind was to place all of their property in joint tenancy rather than make joint wills.

In accordance with this suggestion, deeds bearing the date of February 17, 1944, were prepared by Rodriguez conveying all the real estate owned by both May R. and Charles D. Youngblood to the defendant Annie Moir, as nominee who was merely to act as title holder of record for the purpose of making a reconveyance to Mr. and Mrs. Youngblood in joint tenancy. On February 19, 1944, defendant Annie Moir executed the necessary deeds reconveying the property to the Youngbloods. All these deeds, fourteen in number, were acknowledged by the respective grantors before defendant Rodriguez, a notary public of Cook county, Illinois, on the dates on which they were executed, and revenue stamps were affixed to all of said deeds and duly cancelled. The deeds were then placed in the vault of defendant Rodriguez, but were removed on February 25, 1945, for the purpose of having certificates of magistracy affixed to those deeds relating to certain properties in Indiana and Wyoming. They were then replaced in the vault.

No transactions were undertaken by the parties relative to the personal property owned by each, although a power of attorney was executed by May R. Kenney Youngblood giving her husband, Charles D. Youngblood, the right to sign checks on the account maintained by the paint business. This power of attorney was later revoked.

Difficulties arose between husband and wife, and on April 19, 1944, they separated, due to disagreements relative to financial matters.

On April 26, 1944, prior to her death, May R. Kenney Youngblood caused a letter to be written to Rodriguez stating:

"William E. Rodriguez
160 N. LaSalle Street
Chicago, Illinois
Dear Sir:
    I would like to have you consider as naught all papers, deeds and documents pertaining to my property both real and personal, and not to register or record any papers pertaining thereto.
                          Yours truly,
                          (Signed)   MAY R. YOUNGBLOOD"

On the day prior to her death May R. Youngblood was visited at her home by Frank J. Burke, vice-president of the Chicago City Bank and Trust Company. She had requested that he come to see her regarding the making of a will. Mrs. Youngblood handed Burke a memorandum in her own handwriting regarding the disposition which she wished to make of her property by will. The memorandum states:

"To my sister entire estate both real and personal, incl all monies in bank and stock, jewelry and furnishings of my home, my automobile. The only exception is the paint business and the building in which it is lodged. This I bequeath to Marion Jahn, my bookeeper and Girard McGillen now in Italy in U.S.A. Also one dollar to my estranged husband, Charles D. Youngblood."

Following the death of Mrs. Youngblood, the deeds held by defendant Rodriguez were recorded.

The appellant, Hazel C. Newman, who is named in this opinion as the plaintiff, was a sister of May R. Youngblood, and contended before the master that Rodriguez had no authority to record the deeds; that they were at no time delivered to him by the grantors with the intention and for the purpose of conveying title; that May R. Youngblood executed the deeds to her property in Chicago conditionally with the understanding that Rodriguez would await further instructions from her; and that the agreement between Mr. and Mrs. Youngblood was never consummated because none of the personal property was ever placed in joint tenancy.

The sole issue involved in this cause, as agreed by both plaintiff and defendants, is whether there was good delivery of the deeds conveying the properties in question.

The appellant contends that because the deeds were in the possession of a third party at the time of the death of May R. Youngblood, that fact creates a presumption against delivery, and it is incumbent upon the grantee to overcome the *prima facie* case against a valid delivery by the weight of competent evidence. She places much emphasis upon that well-established principle followed in the cases of *Scott* v. *Cornell,* 295 Ill. 508; *Selby* v. *Smith,* 301 Ill. 554; *Huber* v. *Williams,* 338 Ill. 313; *McClugage* v. *Taylor,* 352 Ill. 550; *Smith* v. *Pelz,* 384 Ill. 446. In all of those cases it was held that delivery is essential to the operation of a deed and must be made during the lifetime of the grantor. *Scott* v. *Cornell* was a suit to set aside a deed from a wife to a husband, which, after the wife's death, was found in the possession of a third person in an envelope with another deed to the same property from the husband to the wife, and it was held that because there was no evidence to show that it was left with the third party to be delivered to the grantee, the latter acquired no title. In that case the party with whom the deed was deposited was also dead and there was no proof or evidence showing any instructions as to a delivery whatsoever.

In all of the other cases above cited, it was held there was no competent proof of a valid delivery and that the delivery of a deed to a third person as the grantor's agent, without any direction to deliver to the grantee, does not constitute delivery. In none of those cases was there sufficient evidence to support a valid delivery, and in none of them were the properties in joint tenancy.

In *Huber* v. *Williams,* 338 Ill. 313, it was stated: "A delivery may be made by acts without words, by words without acts, or by both words and acts, and anything which clearly manifests the grantor's intention that the

deed becomes operative and effectual, that he loses control over it and that the grantee becomes possessed of the estate, constitutes a sufficient delivery."

In addition to offering in evidence the letter sent to Rodriquez by Mrs. Youngblood and the memorandum given Burke for the purpose of drawing a will, verbatim copies of which are included in this opinion, the plaintiff testified to conversations had with her sister in which she says May R. Youngblood told her that while the deeds had been signed, they had been deposited with Rodriguez to hold for further instructions from the deceased. Florence C. Moore, a friend of the family, testified that in February, 1944, the decedent told her over the telephone that her husband was insisting on having his name put on her property; that she was considering doing it because he said he was going to do the same with his property. In a conversation with Mrs. Youngblood, just two days before her death, the witness stated deceased told her that the transferring of the property was all cancelled because her husband did not come through with what he agreed.

Frank J. Burke, vice-president of the Chicago City Bank and Trust Company, testified that a month or so before he was called to see Mrs. Youngblood on the day before her death, she called him on the phone and said she had conveyed her property, the title to which property was in her name, and was putting that property in joint tenancy with Mr. Youngblood and had deposited the deeds with an attorney; further that they were left with the attorney and that she told the attorney to hold them until she gave instructions as to their final disposition.

To sustain the decree the appellees presented the testimony of Ruby Illsley, Marion Jahn and Margaret Lawless, all of whom testified to conversations with Mrs. Youngblood in which she told them she and her husband had placed all of their property together in joint tenancy.

Defendants also introduced testimony of Harold J. Hopkinson, an attorney at law employed in the office of defendant Rodriguez, who related in detail the meeting of Mrs. Youngblood and her husband in the office of Rodriguez, the discussion which took place at that time and the conclusion of the parties to place their properties in joint tenancy. He testified that after the deeds were fully executed he turned them over to Youngblood on March 2, 1944, pursuant to instructions May R. Kenney Youngblood gave him over the telephone. Hopkinson further stated that Mrs. Youngblood called him again on the telephone several days after he delivered the deeds to her husband to tell him that she observed the deeds were unrecorded, and that he informed her that it was not essential for the objective sought to be accomplished that they be recorded, but that if she desired to do so and would pay the costs and charges in connection, he would have them recorded. She informed him that she would think about it.

Plaintiff contends that the testimony of Hopkinson should be given little weight or credit in that at one time he had allowed his appearance to be filed as attorney of record for the defendants in this cause and that without the testimony of Hopkinson there is no evidence to support the finding below that delivery of the deeds had been made. Hopkinson's employment by Rodriguez was on a salary basis and he had conducted business matters for the Youngbloods in connection with the drawing of the deeds in question here. At the institution of this proceeding he had allowed his entry of appearance as counsel for the defendants to be filed, had filed the answer herein, which he did not prepare, and had attended the first hearing. He took no further part in the proceeding and withdrew as counsel.

Hopkinson's testimony confirms and adds to the evidence of the three other witnesses for the defendants that the deceased considered the property as being in joint ten-

ancy. There was also some part of the testimony of the witness, Burke, reporting conversations with the deceased tending to support this view. The master found in his report, which was approved by the chancellor, that there had been a valid delivery of the deeds. This court has announced and consistently followed the rule stated in *Treleaven* v. *Dixon,* 119 Ill. 548, that in chancery cases the whole record is before the court and if there is competent evidence sufficient to sustain the decree it must be affirmed; if not, then it must be reversed, and this is without regard to the views of the chancellor as to the competency of the evidence at the hearing. Any error which may have been committed in ruling upon the admission or exclusion of evidence is unimportant. *Smith* v. *Smith,* 340 Ill. 373.

The cases cited by the plaintiff as to the credit and weight to be given the testimony of Hopkinson, (*Grindle* v. *Grindle,* 240 Ill. 143; *Wiederhold* v. *Wiederhold,* 305 Ill. 429; *Smuk* v. *Hryniewiecki,* 369 Ill. 546, and *McKey* v. *McKean,* 384 Ill. 112,) all contain situations where the testifying attorney had been the principal counsel for the party for whom he testified and had conducted the trial for his client throughout all its stages, withdrawing from the trial only for the purpose of taking the stand. In the instant case, there is no monetary interest on Hopkinson's part, nor is there any showing that he participated as counsel throughout the hearing before the master. We assume the filing of an appearance and answer and attending one hearing were given consideration by the master and by the trial court in determining the weight or credit to be given to Hopkinson's testimony.

The master saw and heard the witnesses and determined the facts, and while all the findings of fact by a master do not carry the weight of that of a jury, or of a chancellor where the witnesses have testified before him, yet the master's findings are entitled to due weight on

review, and where his report has been approved by the chancellor we would not be justified in disturbing such findings unless they were manifestly against the weight of the evidence. (*Zarembski* v. *Zarembski,* 382 Ill. 622; *Mruk* v. *Mruk,* 379 Ill. 394; *Pasedach* v. *Auw,* 364 Ill. 491.) In this cause, there were other witnesses, unconnected with either party, who testified that May R. Kenney Youngblood considered that her property and that of her husband had been conveyed and that the property was, at the time of their conversations with her, being held by her and her husband in joint tenancy. The evidence offered by both parties is in conflict on this point, but the determination of the master, as approved by the chancellor, that there had been a valid delivery of the deeds and that the property had passed in joint tenancy finds support in the evidence, and we cannot say that there is not competent evidence, even excluding the testimony of Hopkinson, supporting the decree.

Plaintiff further contends that the court erred in admitting the testimony of Charles D. Youngblood and William E. Rodriguez on the ground that such testimony was incompetent under section 2 of the Evidence Act (Ill. Rev. Stat. 1945, chap. 51, par. 2) which provides: "No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends as the trustee or conservator of any idiot, habitual drunkard, lunatic or distracted person, or as the executor, administrator, heir, legatee or devisee of any deceased person, or as guardian or trustee of any such heir, legatee or devisee, unless when called as a witness by such adverse party so suing or defending, and also except in the following cases, namely: * * *." Plaintiff further contends that the testimony of Youngblood and Rodriguez is not made competent under any of the exceptions to the act. A study of the act discloses that the compe-

tency, if any, would be derived under the third exception which provides: "Third—Where, in any such action, suit or proceeding, any such party suing or defending, as aforesaid, or any persons having a direct interest in the event of such action, suit or proceeding, shall testify in behalf of such party so suing or defending, to any conversation or transaction with the opposite party or party in interest, then such opposite party or party in interest shall also be permitted to testify as to the same conversation or transaction."

The complaint in this case sets forth the execution of the deeds, as does the answer, but denies delivery. The deeds themselves were admitted as exhibits at the hearing. Youngblood was a principal party in the conveyances and Rodriguez acted as attorney for both parties in the matter, and also, as a notary public, took the acknowledgements of the grantors in the transaction. The plaintiff, Hazel C. Newman, suing as heir, testified at length as to conversations which she had with her sister prior to her death concerning the property and the plans for placing that property in joint tenancy. She also testified as to conversations with Rodriguez, had at her sister's direction, regarding the disposition of the deeds. The master limited the testimony of Rodriguez and Youngblood, upon objection of plaintiff's counsel, to the transaction and specific conversations testified to by the plaintiff and her witnesses. The transaction as to the placing of the property in joint tenancy, and the conversations between the deceased and various witnesses were inextricably intermingled. In most of the conversations, reference was made to the decision of the deceased and her husband to place the property in joint tenancy. Inasmuch, then, as the plaintiff and the plaintiff's witnesses had testified concerning the transaction and the conversations relating thereto, the testimony of. Youngblood and Rodriguez became admissible under the third exception to section 2, as set forth above, as to the same conversations and the same transaction. *Firke* v.

*McClure,* 389 Ill. 543; *Roche* v. *Roche,* 286 Ill. 336; *Vail* v. *Rynearson,* 249 Ill. 501; *Calkins* v. *Calkins,* 220 Ill. 111.

The plaintiff also contends that the transfer of the real estate was a part of a larger contract for the transfer of both real estate and personalty, and that the failure of the two parties to transfer the personalty into joint tenancy amounted to a failure of consideration invalidating the entire agreement and negating the delivery of the deeds. The case cited by the plaintiff supporting this view, *Redmond* v. *Gillis,* 346 Ill. 223, involved a conveyance of real estate in consideration of the grantee assuming an obligation totalling $5000 under certain notes. The grantee failed to assume the obligation and this court held that no interest was conveyed under the deed. A like situation arose in *Huber* v. *Williams,* 338 Ill. 313. In the instant case we do not have the ordinary deeds of bargain and sale, but a voluntary settlement between husband and wife. It is quite clear from the evidence that May R. Youngblood knew that the deeds in question had been fully executed and were lodged with William E. Rodriguez by agreement of the parties and that the contract between herself and her husband was entered into freely and voluntarily. Her subsequent change of mind and desire to terminate the agreement could only be consummated by mutual consent of all the parties to the deeds. That neither party considered that there had been a failure of consideration is best illustrated by the statements of the parties that they considered the property to be in joint tenancy and by the conveyance, by each, of the property to defendant Annie Moir, who in turn reconveyed said property to the deceased and her husband in joint tenancy.

It appears to us that the decree of the circuit court of Cook county is supported by sufficient competent evidence, and for the reasons assigned that decree is affirmed.

*Decree affirmed.*