**Lillie Mae Head, Plaintiff-Appellee, v. Ernest J. Wood, Defendant-Appellant.**

**Gen. No. 11,164.**

Second District, Second Division.

January 16, 1959.

Released for publication February 3, 1959.

Thomas J. Welch, R. Sheridan Welch, of Kewanee, for appellant.

Harper Andrews, and Campbell Andrews, of Kewanee, for Lyman Gustus as administrator of estate of Lillie Mae Head, deceased, plaintiff-appellee.

PRESIDING JUSTICE WRIGHT delivered the opinion of the court.

This is a suit in equity brought by Lillie Mae Head, hereinafter referred to as plaintiff, against Ernest J. Wood, hereinafter referred to as defendant, and Peoples National Bank of Kewanee, Illinois. Prior to the trial, Harper Andrews, as Conservator of the Estate of Lillie Mae Head, was joined as plaintiff. Subsequent to the trial, Lillie Mae Head died and Lyman Gustus, as administrator of her estate, was substituted as plaintiff.

The complaint alleges that on March 9, 1950, plaintiff gave the possession of certain stocks and securities to defendant upon his representation that he would keep them subject to the direction of the plaintiff and return them to her upon request; that on November 15, 1954, plaintiff requested defendant to return the stocks and securities to her which he failed and refused to do, he claiming to be the owner thereof; that some of said stocks and securities had been applied and converted to the use of defendant and that other of said stocks and securities were in a safety deposit box in the name of defendant at the Peoples National Bank of Kewanee, Illinois. The complaint prays judgment for the value of the stocks and securities converted, for an accounting and for an injunction enjoining both defendant and the bank from removing any of the contents of the safety deposit box. Defendant filed an answer denying that he converted the stocks and securities and stated that the stocks and securities were given to him as compensation for services. In a special defense, defendant alleged the transfer of the stocks and securities was a gift made by plaintiff to him for many services performed over a period of

100

years prior to March 9, 1950, when the transfer was made to him.

Prior to trial, the court entered a temporary injunction enjoining the defendant and bank from removing the contents of the safety deposit box. The case was heard by the court without a jury and a decree entered directing defendant and the bank to deliver the securities and other contents of the safety deposit box to the plaintiff, with an assignment by defendant of all stocks and securities standing in the name of defendant, and that defendant account for and pay over all dividends received by him from the stocks and securities, with judgment for costs against defendant. Defendant appeals from this decree and judgment.

The defendant asserts the following contentions: (1) That plaintiff should not recover because there was a variance between the pleadings and proof. (2) That possession of stock certificates registered in a person's name is prima facie evidence that he is the owner and entitled to possession thereof. (3) That no confidential or fiduciary relationship existed between plaintiff and defendant, and if such did exist, there was no evidence of undue influence. (4) That the court erred in ruling defendant incompetent to testify. (5) That the court erred in the admission of evidence.

The record discloses that the defendant first became acquainted with plaintiff in the spring of 1938 when he rented a room at her house and thereafter a rather close relationship existed for a number of years. Defendant assisted plaintiff in her household chores, prepared for her a set of books for her income and expenses, assisted her in her personal bookkeeping and wrote checks on her account in payment of her bills. In 1939, defendant was the Ford dealer in Kewanee and serviced and looked after plaintiff's car without charge. Later, plaintiff inherited a life estate in a good

160 acre farm and in an apartment building. The defendant assisted plaintiff in the management of her apartment building, her farm and her savings and investments for a number of years prior to March 9, 1950, when the stocks and securities in dispute were transferred to defendant's name. In 1941 and 1942, defendant took plaintiff to doctors in Peoria, Bloomington, Galesburg and Moline. Defendant did the general maintenance work in her apartment building from 1938 to 1954. He cut the grass, cleaned the furnace, adjusted oil burner, made repairs to plumbing, repaired leaks in the roof, hauled rubbish, cooked and washed dishes at times. There are numerous other transactions and dealings between plaintiff and defendant shown by the evidence in the record before us, the recitation of which would unduly prolong this opinion and not assist in the determination of the case. There is no evidence that the defendant at any time made any charge for his many services in assisting plaintiff or that he expected to be paid therefor.

On March 9, 1950, the day the stock certificates were endorsed by plaintiff while she was sick in the hospital, the defendant brought them to the president of the defendant bank, and told him that there were certain security salesmen who had been taking advantage of plaintiff by persuading her to sell certain securities and buy other securities, and that in order to protect her interests they had decided between them it would be advisable to have the stocks and securities transferred to the defendant. Although the certificates for the various shares of stocks were put in the defendant's name, his address was shown as 116½ South Tremont Street, c/o Lillie Mae Head, Kewanee, Illinois. The defendant lived at Orland Park near Chicago, but presumably the dividend checks and other papers from these companies were delivered to plaintiff's apartment. The securities were kept in a safety deposit box in defendant's name paid for by plaintiff

and the dividends were placed in plaintiff's account. The safety deposit box contained many personal papers belonging to plaintiff.

 Defendant contends the decree should be reversed because there is a variance between the complaint and proof, but the argument indicates that the real objection is that the complaint did not characterize the relationship between plaintiff and defendant, and did not expressly designate a trustee relationship, a fiduciary relationship or a confidential relationship. Defendant filed an answer to both counts of the complaint and introduced evidence on the issues joined. Defendant's brief does not disclose any objection to plaintiff's evidence on the grounds of variance. Under the circumstances, any ambiguity or defect in the complaint has been waived. Parties may waive formal pleadings by the introduction of evidence or form their own issues on evidence introduced and may voluntarily present issues not presented by the pleadings. Dragosvich v. Allstate Insurance Company, 2 Ill.App.2d 50, 118 N.E.2d 57. Where a party introduces evidence on a subject, or fails to object to evidence offered by the adverse party on such subject, an objection that such subject is not at issue under the pleadings may be waived. McKinney v. Nathan, 1 Ill.App.2d 536, 117 N.E.2d 886. If a party fails to object to evidence on the ground of variance and to point out such variance to the trial court, the objection is waived. The ground of variance should be raised by specific objection during the trial, pointing out the variance. Morgan v. Mixon Motor Company, 10 Ill.App.2d 323, 137 N.E.2d 504.

██ ██ We are in accord with defendant's contention that possession of stock certificates registered in a person's name is prima facie evidence of ownership in the possessor, and that the burden of producing evidence on the question of ownership rests on the person disputing such ownership. We believe, however,

that the plaintiff met the burden of proof and offered sufficient evidence to overcome the prima facie evidence and that the Chancellor was correct in finding that the certificates of stock were in fact the property of plaintiff.

When the entire record is considered showing the many transactions between the plaintiff and defendant over a period of several years prior to the date of the transfer of the securities, there can be no doubt that an agency relationship existed between the plaintiff and defendant at the time of the transfer of said securities. In fact the defendant concedes that an agency relationship existed but contends that the transfer of the securities was a gift or in payment for past services. This contention is not sustained by the evidence, but on the contrary, the evidence leads to only one conclusion that the defendant accepted the property as the agent of plaintiff to hold for her and by so doing a fiduciary relationship was created between the parties. In Suchy v. Hajicek, 364 Ill. 502, 509–510, 4 N.E. 2d 836, 840, it was stated that courts have been reluctant to adopt a definition applicable to all possible situations involving relations of confidence:

"In general, a fiduciary or confidential relationship exists where trust and confidence are reposed by one person in another, who, as a result, gains an influence and superiority over the first. (Cases cited) In particular, where, by reason of kinship, business association, disparity in age, or physical or mental condition, or other reason, the grantee is in an especially intimate position with regard to the grantor and the latter reposes a high degree of trust and confidence in the former, a confidential relationship may be said to exist.

"Where it appears that relations of trust and confidence obtain between parties to a transaction like this, the dominant party, who has profited thereby, must rebut the presumption of fraud by clear and convincing proof that he has exercised good faith and

has not betrayed the confidence reposed in him. . . . It is not essential that the undue influence vitiating the transfer be deemed fraudulent, but it is sufficient if the influence arises out of the fiduciary or confidential relations."

■ The rule that an agent cannot secretly benefit personally because of his relationship with his principal is not limited to defined confidential relations. Davis v. Hamlin, 108 Ill. 39. In the Davis case, supra, in a very thorough opinion, the Supreme Court of this State many years ago announced that the relationship of confidence between a principal and his agent is very similar in many respects as that of a trust relation or fiduciary relation and in reviewing the early authorities upon this subject stated at pages 48–49:

"The subject is not comprehended within any such narrowness of view as is presented on appellant's part. In applying the rule, it is the nature of the relation which is to be regarded, and not the designation of the one filling the relation. Of this principal Bispham says: 'The rule under discussion applies not only to persons standing in a direct fiduciary relation towards others, such as trustees, executors, attorneys and agents, but also to those who occupy any position out of which a similar duty ought, in equity and good morals, to arise.' (Bispham's Equity, sec. 93.) In Greenlaw v. King, 5 Jur. 19, Lord Chancellor Cottenham, speaking of this doctrine, says: 'The rule was one of universal application, affecting all persons who came within its principle, which was, that no party could be permitted to purchase an interest when he had a duty to perform which was inconsistent with the character of a purchaser.' 'It is the duty of a trustee,' said Lord Brougham, in Hamilton v. Wright, 9 Cl. & Fin. 111, 'to do nothing for the impairing or destruction of the trust, nor to place himself in a position inconsistent with the interests of the trust.' And on page 124: 'Nor is it only on account of the conflict

105

between his interests and his duty to the trust that such transactions are forbidden. The knowledge which he acquires as trustee is, of itself, sufficient ground of disqualification, and of requiring that such knowledge shall not be capable of being used for his own benefit to injure the trust.' Although this was said of a trustee, we think it may be equally said here with respect to Davis and the business which he was employed to manage. The rule we apply, as to its broadness in extent, is aptly expressed in the American note to Keech v. Sandford, 1 Lead. Cases in Eq. 53, as follows: 'Wherever one person is placed in such relation to another, by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated.' "

██ The law is well established in Illinois, that an agent must not put himself in a position which is adverse to that of his principal during the continuance of the agency. The agent must see that he meets the responsibility of his position and does not take any advantage, either for his own personal gain or to the injury of the person he represents. Leark v. McCabe, 349 Ill. 348, 182 N. E. 388; Sams v. Rigg, 339 Ill. App. 25, 88 N.E.2d 673. When defendant states that there was a gift of the stocks and securities, he assumes the burden of proving such transaction by clear and convincing evidence. Bowman v. Pettersen, 410 Ill. 519, 102 N.E.2d 787. The trial court, sitting without a jury, found no convincing evidence of a gift or payment for services and the weight of the evidence is clearly against the defendant.

This case involved the testimony of many witnesses and the analysis of a great number of exhibits. The trial judge saw and heard the witnesses, gave consideration to their testimony and to the interpretation of

106

numerous transactions as shown by exhibits of bank ledgers, checks, correspondence and other documents in evidence. The trial court was in a better position to determine the facts and credibility of witnesses than is this court of review. In Finney v. White, 389 Ill. 374, 381, 59 N.E.2d 859, 862, it was stated:

"The chancellor who tried the case saw the witnesses and heard them testify and was in a better position to determine their credibility than we are. The chancellor in this case evidently believed the witnesses for the appellees and so found. A court of review will not disturb the findings of fact made by the chancellor, under such circumstances, unless they are clearly against the manifest weight of the testimony."

In Clark v. Clark, 398 Ill. 592, 600–601, 76 N.E.2d 446, 450, the above rule was again announced as follows:

"In this case the chancellor saw the witnesses and heard them testify. He was in a much better position to determine the facts than is this court. The rule has many times been announced by this court that when a chancellor has heard the testimony in open court and so sees and hears the witnesses, this court will not reverse his findings of fact unless they are palpably against the weight of the evidence. West v. LePage, 381 Ill. 131, 44 N.E.2d 855."

At the time of the trial, plaintiff was about sixty-three years of age and it was stipulated that on March 1, 1955, she had been adjudicated incompetent by the County Court of Henry County, Illinois, and that Harper Andrews was appointed conservator of her estate and not of her person.

The lower court permitted the defendant to testify at length over the objection of the plaintiff, but later struck and excluded defendant's testimony for the reason that plaintiff at the time of the hearing was mentally ill and was thus entitled to the benefit of sec. 2 of the Evidence Act [Ill. Rev. Stats. 1955, ch. 51, § 2].

It is contended that the test of whether one is "mentally ill" under sec. 2 of the Evidence Act is determined by the definition of "mentally ill" contained in the statutes hereinafter cited. It is insisted by the defendant that the test of mental illness was not met by plaintiff to bring her within the provisions of sec. 2 of the Evidence Act for the reason that there was no showing that plaintiff was a person afflicted with a mental disease to such an extent that for her own welfare or the welfare of the community she requires care, treatment, detention and training. Defendant argues such requirements are cumulative and that it is necessary that all of the items be present, being care, treatment, detention and training in order for defendant to be incompetent as a witness against the conservator herein. With this contention and argument, we cannot agree.

On July 16, 1951, sec. 2 of the Evidence Act, Chap. 51, Ill. Rev. Stat., 1955, was amended and provides in part, as follows:

"No party to any civil action. . . . shall be allowed to testify therein of his own motion, or in his own behalf, . . . . when any adverse party sues. . . . as the . . . . conservator of any. . . . person who is mentally ill or mentally deficient."

Prior to July 16, 1951, the above section provided, in part, as follows:

"No party to any civil action. . . . shall be allowed to testify therein of his own motion, or in his own behalf, . . . . when any adverse party sues. . . . as the trustee or conservator of any idiot, habitual drunkard, lunatic or distracted person."

On July 16, 1951, the State of Illinois adopted a Mental Health Act, Chap. 91½ [Ill. Rev. Stats. 1955, ch. 91½, § 1—8] which defined a mentally ill person, as follows:

108

" 'Mentally Ill Persons', when used in this Act, means any person afflicted with mental disease to such an extent that for his own welfare, or the welfare of others or of the community, he requires care, treatment, detention and training, and which renders him incapable of caring for and managing his own estate. . . ."

Both Chap. 4, Sec. 4–1 (5) and Chap. 23, Sec. 2026, 15–(4) define "mentally ill" in identical language as follows:

" 'Mentally ill' as used in this Act shall mean any one or more of the following:

"(a) Adjudged by a court of competent jurisdiction to be mentally ill pursuant to the provisions of the Mental Health Code;

"(b) Adjudged by a court of competent jurisdiction to be insane or mentally ill under any prior law of this state;

"(c) Adjudged by a court of competent jurisdiction to be insane pursuant to the provisions of any law of this state relating to criminal jurisprudence."

Under the law prior to the 1951 amendment of sec. 2, there was no doubt that a party seeking to testify in his own behalf against a conservator was incompetent. Antrim v. Noonan, 186 Ill. App. 360; Morrison v. Morrison, 241 Ill. App. 359.

It will be noted that sec. 2 of the Evidence Act does not define who is "mentally ill" or "mentally deficient." It is quite obvious that there are many situations that would necessitate the appointment of a conservator when the incompetent person does not require detention and training and where care and treatment would not necessarily be prescribed. The action of the trial court in excluding the testimony of defendant in this case was in accord with the intention and spirit of sec. 2 of the Evidence Act for the purpose of pro-

109

tecting mentally ill persons from the testimony of adverse litigants.

Defendant contends that regardless of the court's ruling on the question of his competency to testify, he was competent to testify under the second exception to sec. 2 of the Evidence Act to certain transactions testified to by plaintiff's witnesses who were agents of plaintiff. Defendant further argues that the court committed error in the admission of certain testimony.

In a chancery case the whole record, including all of the evidence offered, is before the court on appeal and it will be presumed that all of the incompetent evidence was rejected and all competent evidence was considered on the final hearing. If there is competent evidence in the record sufficient to sustain the decree, it will be affirmed, if not, it will be reversed. Smith v. Smith, 340 Ill. 373, 172 N. E. 736; Kennard v. Curran, 239 Ill. 122, 87 N. E. 913; Treleaven v. Dixon, 119 Ill. 548, 9 N. E. 189. We believe the weight of the evidence in this case is sufficient to sustain the decree and that any error which the court might have committed in excluding testimony of defendant was not fatal and did not constitute reversible error. This case was heard by the court, without a jury, and the trial judge is allowed a large discretion in the admissibility of evidence, and it is presumed on appeal that the court considered competent evidence only. Oswald v. Nehls, 233 Ill. 438, 84 N. E. 619; Champion v. McCarthy, 228 Ill. 87, 81 N. E. 808.

We find no merit to defendant's contention that reversible error was committed in the taking of the evidence of one witness during the absence of the defendant and his attorney as no just cause has been shown to us why they were not present in court. After a party has appeared in court he is presumed to be present and aware of all steps taken until the case is ended. He is charged with knowledge that any

110

proper order may be made at any time. Barclay v. Barclay, 83 Ill. App. 366, 369, affirmed 184 Ill. 471.

For the reasons herein stated, the decree and judgment of the Circuit Court of Henry County is affirmed.

Judgment affirmed.

SOLFISBURG and CROW, JJ., concur.