**Eleanor B. Roth, Counterplaintiff-Appellant, v. G. Wallace Roth, Counterdefendant-Appellee.**

**Gen. No. 51,326.**

First District, Fourth Division.

October 16, 1968.

Rehearing denied and opinion modified January 8, 1969.

Joseph I. Bulger, of Chicago, for appellant.

Charles F. Short, Jr., of Chicago, for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This is an appeal from an "order and modification of a decree" entered February 8, 1966, nunc pro tunc as of February 3, 1966. The order denied Eleanor B. Roth's motion to strike and dismiss the counterpetition filed by G. Wallace Roth, and allowed the prayer of the said counterpetition in part by relieving G. Wallace Roth from the obligation of complying with certain settlement

provisions embodied in a decree of divorce entered on July 25, 1963.

On January 9, 1963, G. Wallace Roth (hereafter referred to as appellee) filed a complaint for divorce in which he charged Eleanor B. Roth (hereafter referred to as appellant) with desertion. On February 5, 1963, the appellant filed her answer to the complaint and a counterclaim for separate maintenance. The appellee filed his answer to the said counterclaim on February 25, 1963.

On July 23, 1963, the appellant filed an amended counterclaim for divorce. The divorce decree was entered on July 25, 1963. On November 4, 1964, appellant filed a petition alleging that the appellee had wilfully failed and refused to pay her the sum of $100 per month due on a note of $3,000, as provided by paragraph 2 of a property settlement agreement entered into by the parties. The agreement also contained the following paragraphs:

> 5. Wallace acknowledges that there is presently pending in the Probate Court of Cook County a certain cause #60 P 4473, Docket 616, Page 540 entitled In the Matter of the Estate of Norbert William Jeran and that the will, which has been duly admitted to probate, establishes a testamentary trust, described in said will as Trust B. Wallace further acknowledges that the res of said Trust B consists of assets having a present market value of approximately Ninety Thousand Dollars ($90,000.00) and further that under the terms of said testamentary trust, he and his brother, Robert R. Roth, will each receive Fifty Percent (50%) of said Trust B upon the death of their mother, Lydia J. Roth, who has a life interest in the income therefrom.
>
> Wallace agrees to execute an irrevocable assignment in favor of Eleanor directing the Harris Trust and Savings Bank (or its successor in trust) as trustee of the aforesaid trust to pay to Eleanor,

288

upon the death of Wallace's mother, Lydia J. Roth, an amount equal to Fifty Per Cent (50%) of his then interest in Trust B aforesaid. Wallace further agrees to obtain from his brother, Robert R. Roth, a release of any and all claims which Robert may have or hereafter claim to have as a contingent remainderman with respect to said trust. In the event of Wallace's remarriage (if the parties hereto are divorced and Wallace thereafter remarries), he further agrees to enter into an antenuptial agreement containing a waiver and release by any such subsequent spouse to any and all right, title, claim, demand or interest in and to the foregoing assignment by Wallace of Fifty Per Cent (50%) of his aforesaid vested remainder.

In the event Wallace's brother, the aforesaid Robert R. Roth, predeceases his mother, Lydia J. Roth, leaving no spouse or issue him surviving, thereby enhancing Wallace's inheritance, Eleanor acknowledges that she has no claim to such additional increment and agrees not to assert any right, title, claim, demand or interest with respect thereto.

6. Wallace agrees to maintain insurance on his life in the sum of Twenty Five Thousand Dollars ($25,000.00) and to nominate and maintain Eleanor as the beneficiary thereof until the death of Wallace's mother, Lydia J. Roth.

To the petition the appellee filed an answer and counterpetition on January 18, 1965, in paragraphs 2, 3 and 4 of which he seeks modification of the decree insofar as it provides that he pay the appellant the amount due on the note and that he pay her the sum of $25,000 out of an inheritance from his uncle's estate. The reason assigned for the modification of the decree was that the appellant made "fraudulent, deceitful misrepresentations" for the purpose of having the provisions referred to incorporated in the decree. In his counterpetition ap-

pellee alleges that he agreed to the provisions in question because of certain representations allegedly made by the appellant as follows: a) What would she do in her old age? b) She might not be able to work forever. c) She had no marriage plans for the future. d) She felt insecure financially and needed some immediate supplemental income plus something for her future.

The counterpetition also stated that appellant had married a man of considerable means which eliminated the basis on which appellee had agreed to the certain provisions in the decree. On October 26, 1965, the appellee filed an amended petition in which he alleged that the appellant had voluntarily made misrepresentations on various dates on or about July 23, 1963, during pretrial conferences before the judge, including "a denial of marriage plans for the future," and that as a direct result of such representation "the Court prevailed upon Petitioner, through suggestions and admonitions, in reliance upon said misrepresentations, to enter into said property settlement agreement, particularly Paragraphs 2, 5 and 6 thereof, . . ."

In support of the counterpetition appellee filed an affidavit setting forth the representations heretofore mentioned, also appellant's statement, "It is ridiculous to think that I have any marriage plans. I do not have any marriage plans."

Appellant filed a motion to strike and dismiss the petitions. Later, appellant also filed a motion and amended petition for rule to show cause, in which amendment she asked, among other things, for attorney's fees for the prosecution of her petition.

██ On February 3, 1966, the court held a hearing and heard witnesses. The appellant at first objected to the hearing, but participated in it through her attorney and introduced documentary evidence. In McKinney v. Nathan, 1 Ill App2d 536, 117 NE2d 886, the court said at page 543:

"The parties may, by the introduction of evidence or their conduct in the trial, waive formal pleadings or form their own issues on the evidence introduced, and they may voluntarily present under the evidence issues not presented by the pleadings. An objection that a certain matter is not an issue under the pleadings or that it is not denied or properly denied may be waived by a party where he introduces or brings out evidence bearing on the subject, or tries the case as if the matter were not [sic] in issue."

This rule goes back to the rule prevailing under the common law pleading practice in Illinois. Puterbaugh, Common Law Pleading and Practice, 10th edition, section 120; Unity Co. v. Equitable Trust Co., 204 Ill 595, 599, 68 NE 654; Head v. Wood, 20 Ill App2d 97, 103, 155 NE2d 348; Mooney v. Underwriters at Lloyd's, London, 33 Ill2d 566, 570, 213 NE2d 283.

In the instant case the appellee's former attorney was one of the witnesses at the hearing, and he testified that during the conference prior to the entering of the original decree, Mrs. Roth had stated, among other things, that "she had no plans and intentions of remarrying, and requested that a substantial settlement be afforded for her for the foregoing reasons. She denied that she had any marriage plans."

The attorney-witness then testified that the court had stated that since Mrs. Roth had denied any intention of remarrying, the attorney for appellee had no basis for relying on an argument that the settlement was inequitable by reason of the likelihood of a remarriage. The judge of the court then said he wished to give his recollection of what transpired at the conferences, and this was objected to by the attorney for appellant. The attorney further testified that the judge stated that in his judgment, unless those matters or provisions were

291

included there was no likelihood or possibility of settling the matter.*

It is worthy of note that the decree of divorce was entered on July 25, 1963, and that in December of 1963 the appellee remarried. Thirty-one days after the decree of divorce the appellant married George V. Brown. The appellee testified that he had known Brown since 1947 and had introduced him to the appellant in 1948 or 1949; that he had worked with Brown as an attorney.

The court stated: ". . . within a period of 31 days from the date of the entry of this decree, Mrs. Roth married a mutual friend whom they had both known and with whom Mr. Roth had worked, and from the testimony here of Mr. Roth now, evidently she knew him from 1948 on." The court further stated that had the appellant intimated or advised the court that she intended to marry Mr. Brown he would certainly not have induced the appellee to sign the property agreement.

The order was then entered modifying the decree, and recited, among other things, the alleged misrepresentations of the appellant, the most important of which was that "she did not have any marriage plans," and that "in reliance upon° said representations, the said G. Wallace Roth was induced to enter into a property settlement agreement dated July 23, 1963." The order further set out that "likewise in reliance upon said representations, the Court approved said property settlement agreement; that said representations were false in that the said Eleanor B. Roth had prior to and during said pre-trial conferences made plans to marry one George V. Brown of Cleveland, Ohio," and that she married him 31 days after the entry of the decree of divorce. The order stated that "said misrepresentations were a fraud

---

* While it does not clearly appear from the record, it is certainly evident that the settlement conferences also covered the question of an amendment of appellant's bill for separate maintenance, making it a bill of divorce, which would be heard without contest.

on this Court and likewise fraudulent inducements to G. Wallace Roth resulting in his signing of the aforedescribed property settlement agreement."

The decree provided that the appellee pay to the appellant the sum of money demanded in her petition, and that the motions to strike and dismiss the counterpetition and amended petition be denied; that the decree of divorce and the property settlement incorporated therein be modified by vacating and setting aside paragraphs 5 and 6 of the said property settlement agreement, and that the motion of the appellant for attorney's fees be denied.

In Walters v. Walters, 341 Ill App 561, 94 NE2d 726, there is a full discussion of the distinction between alimony payable in installments and a gross amount awarded as alimony and incorporated in the decree. The court cites many cases, among them Plaster v. Plaster, 47 Ill 290, in which case the court said at page 294:

". . . where a gross sum is decreed and received for, or in lieu of, alimony, it must be held to be in full discharge and satisfaction for all claim for future support of the wife. . . ."

The Walters case went to the Supreme Court on a certificate of importance and was there affirmed (409 Ill 298, 99 NE2d 342).

In Buck v. Buck, 60 Ill 241, the court held:

"Whether the alimony is too high . . . it is not now necessary for us to express an opinion. It was competent for the plaintiff in error to consent to such a decree and having done so, it must remain forever binding on him."

Many other cases are cited in the Walters opinion, all to the same effect, including Plotke v. Plotke, 177 Ill App 344, and Maginnis v. Maginnis, 323 Ill 113, 153 NE 654. On page 571 the court in Walters stated:

293

"That the award may be payable in installments is not determinative of the question as to whether it is gross alimony or periodic alimony. Gross alimony may be payable in installments—whether all cash or all or partly on credit does not affect the essential nature of the transaction. *The principle involved is that gross alimony becomes a vested right from the date of the rendition of the judgment, and the manner of its payment in no wise affects its nature or effect.*" (Emphasis in original opinion.)

Also see Kohler v. Kohler, 31 Ill App2d 151, 175 NE2d 603.

In the instant case, from the property settlement incorporated in the decree there is no question that the award was one of alimony in gross. However, another question is raised by the appellee who contends that even where there has been an agreement between the parties incorporating the money and property which are to be given to the appellant by the appellee, such agreement, even if incorporated in the decree, can be held to be void after it is entered into because of fraud and misrepresentation on the part of the appellant. In this case the charge is made that the appellant made false statements which induced the action of the appellee in entering into the oral agreement and also induced the court to incorporate the oral agreement in the decree of divorce.

In Plavec v. Plavec, 30 Ill App2d 345, 174 NE2d 578, the court held that upon proper grounds, relief from a final divorce decree, after 30 days from the entry thereof, may be had upon petition, as provided in section 72 of the Civil Practice Act. The court lays down the rule that generally, a misrepresentation to constitute fraud must relate to a past or existing fact, and not to the future. However, it is noted that in some cases "some

promises, not misrepresentations of existing facts, wrongfully entered into with the intention to deceive and for the purpose of obtaining an advantage, may be the basis of equitable relief from a judgment or decree obtained by fraud."

■ Under this rule, the petitions of the appellee in the instant case could properly be brought under section 72, and the court's ruling denying appellant's motion to dismiss on that ground was correct. In Van Dam v. Van Dam, 21 Ill2d 212, 171 NE2d 594 (cited in Plavec), the court held that a petition under section 72 of the Civil Practice Act is applicable, and said at page 215:

"At the outset, therefore, the question arises whether the relief sought by defendant's petition in this cause would have been obtainable under a former bill of review, or bill in the nature of a bill of review. Those bills were, for practical purposes, divided into three general classes: (1) bills for error apparent on the face of the record, (2) bills to review a decree on account of new matter or newly discovered evidence, and (3) bills to impeach a decree for fraud. (Taylor v. Wright, 400 Ill 179.) "

■ As we have pointed out, the court found that the representations made by the appellant that she did not have any marriage plans were false, and that at the time and prior to the pretrial conferences the appellant had made plans to marry one George V. Brown, whom she subsequently married. There is no evidence in the record to support the finding of the court. There is evidence that the appellant had been acquainted with Brown for a considerable period of time, but there is nothing in the record to show any communication or contact with Brown during the period in question. In order to vacate a decree of this character, embodying a voluntary agreement between parties, it is necessary that the

evidence showing false representations must be clear and convincing. No such evidence appears in this case. Neither by the allegations of fact set up in the pleadings, nor by the matters brought out in the hearing was there any ground for modifying the original decree.

The judgment of the Circuit Court is reversed and the original decree entered on July 25, 1963, is reinstated in full.

Reversed.

DRUCKER and ENGLISH, JJ., concur.